Belknap
No. 94-518

THE STATE OF NEW HAMPSHIRE

v.

TRACY S. TAYLOR

June 3, 1996

*Jeffrey R. Howard*, attorney general (*Mark D. Attorri*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant, Tracy S. Taylor, was convicted of second degree murder following a jury trial in Superior Court (*Fauver*, J.). *See* RSA 630:1-b (1986). On appeal, he argues that the court erred: (1) in allowing the State to impeach his direct testimony with the details of a prior robbery conviction; (2) in refusing to give jurors a "reasonable efforts" instruction regarding lesser-included offenses; and (3) in refusing to allow him to call a certain witness to corroborate his manslaughter defense. We affirm.

On September 23, 1993, the defendant visited his girlfriend, Carmen Blake, at her apartment. When he arrived, he found the victim, Bill Horan, talking with Blake at her kitchen table. The couple knew Horan because they had been enrolled in a drug rehabilitation program with him in 1993. The group began injecting and smoking cocaine and heroin shortly after the defendant's arrival.

At some point during the evening, Horan made a comment about Blake's anatomy which implied that he had been intimate with her. The defendant was shocked and angered by the comment, but chose not to confront Horan. He believed Horan could purchase crystal methamphetamine at a business located across a field from Blake's apartment and did not want to risk alienating Horan before the drug purchase took place.

Later that evening, the defendant and Horan left Blake's apartment and walked across the field to buy drugs. At the time, the defendant was "pretty messed up" because of the cocaine and heroin he had used at Blake's apartment. During the walk, Horan made additional comments about Blake's anatomy. The defendant again decided not to react to the comments because he did not want to disrupt the drug purchase.

When the pair arrived at the business, the defendant quickly decided that Horan would have more luck with the drug purchase if he operated alone. Accordingly, the defendant left the area and walked back toward Blake's apartment, stopping at the far edge of the field. As he waited for Horan to return, the defendant talked separately to Blake and her son, both of whom had walked into the field to express their outrage at Horan's earlier remarks. Blake told the defendant she did not want Horan back in her apartment.

When Horan returned from the drug purchase, the defendant met him at the edge of the field and relayed Blake's message. Horan responded by pushing and threatening the defendant. The defendant removed a knife from his pocket and confronted Horan. The two men scuffled and the defendant stabbed Horan four times. The defendant testified that he did not think that the wounds were fatal, in part because Horan was still standing after the altercation and in part because he had not intended to kill anyone. He later learned, however, that Horan died as a result of his wounds.

The defendant was indicted for first degree murder. At trial, he argued that he was only guilty of provocation manslaughter. After three days of deliberations, the jury convicted him of second degree murder. The superior court sentenced him to thirty-five years to life in prison.

## I. Prior Convictions

The defendant's first argument on appeal is that the trial court committed reversible error by allowing the State to impeach his direct testimony with details about his prior robbery conviction.

On direct examination, the defendant testified that he had been convicted of robbery and burglary in 1986. He revealed the essential facts of both offenses and testified that he spent more than six years in jail for the crimes. Defense counsel chose to introduce the convictions during direct examination because the State had been granted permission, under New Hampshire Rule of Evidence 609(a), to refer to them during cross-examination. *See* N.H. R. EV. 609(a).

On cross-examination, the State referred to the prior robbery conviction by introducing the defendant's written description of the crime as it appeared in a pardon application. The State argued that

the defendant's explanation for his conduct in this case mirrored his explanation of the robbery in the pardon application. Asserting that a defendant who relies on the same explanation more than one time may be lying, the State sought to demonstrate that the defendant's testimony regarding the stabbing was not true.

On appeal, the defendant offers two reasons why the trial court erred in allowing the State to impeach him with the description contained in the pardon application. First, he argues that Rule 609(a) does not authorize a party to introduce details about a witness's prior convictions because those details are inherently prejudicial. Instead, the rule only authorizes a party to introduce the fact of a conviction. Second, he argues that the details contained in the pardon application improperly allowed the State to argue that his testimony about the stabbing was untrue. According to the defendant, the State could not argue that his testimony was untrue without first demonstrating that his explanation for the robbery was untrue. The defendant maintains that the court's error was not harmless.

■ We need not decide whether the trial court properly admitted the information in the pardon application because, even assuming error, we agree with the State that any error was harmless beyond a reasonable doubt. *See State v. Judkins*, 128 N.H. 223, 226, 512 A.2d 427, 429 (1986). "The burden is on the State to prove harmless error, . . . and this burden is met only if we can conclude beyond a reasonable doubt that the evidence did not affect the verdict." *State v. Silk*, 138 N.H. 290, 291, 639 A.2d 243, 244 (1994) (citation omitted). In evaluating a claim of harmless error, the question "is not . . . whether the evidence, apart from that erroneously admitted, would support a finding of guilt, but whether it can be said beyond a reasonable doubt that the inadmissible evidence did not affect the verdict." *State v. Skidmore*, 138 N.H. 201, 203–04, 636 A.2d 64, 66 (1993) (quotation omitted).

■ We address each of the defendant's arguments separately under the harmless error analysis. We initially reject the defendant's suggestion that the details in the pardon application were so prejudicial that they affected the verdict. In his direct testimony about the robbery, the defendant referred to almost all of the facts later elicited using the pardon application. The defendant admitted on direct examination that he attempted to steal $280 from the South Street Market, that he hit the cashier on the head with a glass jar during the crime, and that he was "caught red-handed."

The only additional evidence drawn from the pardon application served to explain or minimize the defendant's conduct. More

specifically, the evidence from the pardon application established that the defendant was drunk at the time of the crime, that he did not intend to harm the robbery victim when he threw the glass jar, that he was attacked by the victim as he tried to escape, that he did not act with purpose, and that all the money was recovered. Those details were less damaging than the ones divulged by the defendant on direct examination. As a result, we cannot conclude that cross-examination using the pardon application altered the outcome of the defendant's case. Cf. State v. Ramos, 131 N.H. 276, 283–84, 553 A.2d 275, 280 (1988) (no abuse of discretion in allowing State to introduce evidence of prior conviction when defendant gave a lengthy description of the conviction).

Our conclusion is bolstered by the fact that the trial court took steps to limit the prejudicial impact of the information in the pardon application. The court expressly instructed jurors to consider the information only to evaluate the defendant's credibility. It also barred the State from telling jurors that the information came from a pardon application.

■ We also reject the defendant's assertion that the verdict was affected by the State's decision to use the pardon application to argue that the defendant's explanation for the stabbing was untrue. As the record demonstrates, the defendant contradicted his own explanation of the stabbing several times during cross-examination. At trial, the defendant explained that he did not intend to kill Horan. He testified that the stabbing was a mere reflex and not an action within his control. He also testified that his drug use affected his ability to understand what was happening.

It is true that the State used the pardon application to show that the defendant had made the same argument when explaining the robbery. But the State elicited other testimony from the defendant that directly contradicted his version of events. Judkins, 128 N.H. at 226, 512 A.2d at 429. Under questioning by the State, the defendant admitted that he was able to make decisions before, during, and after he stabbed Horan. Moreover, the defendant admitted that he was not so high that his motor coordination was impaired. He also testified that he told Blake's son that he was going to kill Horan. Finally, he testified that he was angry about the rude comments Horan had made earlier in the evening.

As compared to the information in the pardon application, this evidence was overwhelming. Accordingly, we find that the decision to admit the information in the pardon application was harmless beyond a reasonable doubt.

*II. Jury Instructions*

The trial court instructed the jury on first degree murder, RSA 630:1-a (1986 & Supp. 1995), and the lesser-included offenses of second degree murder, RSA 630:1-b, and reckless manslaughter, RSA 630:2, I(b) (1986). The court also instructed the jury on provocation manslaughter. RSA 630:2, I(a) (1986). In an effort to structure the jury's consideration of those crimes, the court issued an "acquittal first" instruction that described the circumstances under which jurors should consider lesser-included offenses. The key component of the instruction was a requirement that jurors acquit the defendant of a greater offense before considering the next lesser-included offense. The court stated:

> [I]n your deliberations you should first consider whether or not the defendant is guilty of first degree murder. If you so find, then you should consider whether or not that charge should be reduced to manslaughter based on provocation. If you find the defendant not guilty of first degree murder, then you should go on to consider whether or not he is guilty of second degree murder. If you so find, then you must consider whether or not that charge must be reduced to manslaughter based on . . . provocation . . . . If you find the defendant not guilty of first degree murder or second degree murder, then you should go on to consider whether he is guilty of manslaughter based on recklessness.

The defendant argues that he was prejudiced by the trial court's "acquittal first" instruction. According to the defendant, the trial court should have given a "reasonable efforts" instruction, which would have allowed jurors to consider a lesser-included offense if, after reasonable efforts, they could not agree on a verdict on the immediately greater offense.

This court has not adopted one form of transitional instruction to guide juries in their consideration of lesser-included offenses. *See State v. Burley*, 137 N.H. 286, 291, 627 A.2d 98, 101–02 (1993). There is wide disagreement among other courts about whether an acquittal first or reasonable efforts instruction is proper. *See State v. Daulton*, 518 N.W.2d 719, 721 (N.D. 1994) (citing cases). A majority of other courts have adopted the acquittal first instruction. *Id.* We find their reasoning persuasive and hold that the acquittal first instruction is proper in New Hampshire.

Several factors lead us to this conclusion. First, an acquittal first instruction protects the State's "substantial interest . . . in

securing a conviction on the most serious charge that the evidence will reasonably support." *State v. Sawyer*, 630 A.2d 1064, 1071 (Conn. 1993). It does so by increasing the likelihood that jurors will devote serious attention to the charged offense. A reasonable efforts instruction, by contrast, "could encourage [jurors] to give the charged offense short shrift and to turn to lesser included offenses in order to reach a . . . verdict virtually at the outset of its deliberations." *Id.* at 1073; *see also Daulton*, 518 N.W.2d at 723.

■ Second, an acquittal first instruction promotes just verdicts by requiring jurors to deliberate thoroughly on the evidence. *People v. Boettcher*, 505 N.E.2d 594, 597–98 (N.Y. 1987); *Sawyer*, 630 A.2d at 1074. Other courts have criticized the reasonable efforts instruction for a corresponding lack of thoroughness and accuracy. As the New York Court of Appeals has pointed out, a jury deliberating under a reasonable efforts instruction can too easily reach a compromise verdict based on sympathy or on a desire to end jury service. *Boettcher*, 505 N.E.2d at 597–98; *State v. Van Dyken*, 791 P.2d 1350, 1361 (Mont.), *cert. denied*, 498 U.S. 920 (1990). In doing so, it might ignore evidence that would support a guilty verdict on a more serious charge. We agree that such an outcome offends the principle that jurors are "not to reach compromise verdicts based on sympathy for the defendant or to appease holdouts, but to render a just verdict by applying the facts it finds to the law it is charged." *Boettcher*, 505 N.E.2d at 597 (citation omitted).

Courts that have endorsed a reasonable efforts instruction emphasize that an acquittal first instruction makes coerced verdicts more likely. *See, e.g., State v. Thomas*, 533 N.E.2d 286, 292 (Ohio 1988), *cert. denied*, 493 U.S. 826 (1989). They point out that under an acquittal first instruction, jurors on a divided jury who are not convinced the defendant is guilty of a greater offense might nonetheless vote to convict because they object to "turn[ing] an obviously dangerous person loose." *State v. Fletcher*, 717 P.2d 866, 872 (Ariz. 1986) (en banc) (Feldman, J., concurring). But this is a possibility inherent in all jury deliberations requiring a unanimous verdict, and we have accepted it as part of our jury system. "We do not see in this formulation any coercion that would cause a jury to convict of a greater offense, if it was not unanimous in a guilty verdict." *State v. Raudebaugh*, 864 P.2d 596, 601 (Idaho 1993).

The defendant nonetheless asserts that the trial court should have given a reasonable efforts instruction in this case. The defendant's strategy was to prove that he committed manslaughter, not murder. He argues that because the court's instruction informed the jury it could convict him of manslaughter only if it first acquitted him of

two more serious crimes, it unfairly subordinated his defense. We disagree.

The defendant requested and received two manslaughter instructions — one on provocation manslaughter, *see* RSA 630:2, I(a) ("[a] person is guilty of manslaughter when he causes the death of another . . . [u]nder the influence of extreme mental or emotional disturbance caused by extreme provocation but which would otherwise constitute murder"), and one on reckless manslaughter, *see* RSA 630:2, I(b) ("[a] person is guilty of manslaughter when he causes the death of another . . . [r]ecklessly").

■ The trial court did not treat provocation manslaughter as a lesser-included offense. As a result, the trial court's acquittal first instruction — which only governed the jury's transition from greater to lesser-included offenses — had no impact on the defendant's provocation manslaughter defense. The language of the court's provocation manslaughter instruction demonstrates the point. The court told jurors that if they found the defendant guilty of murder they should then consider whether that charge should be reduced to manslaughter based on provocation. That instruction *required* the jury to consider the defendant's provocation defense regardless of the outcome on the murder charge. Viewed in this way, we cannot see how the trial court subordinated the defendant's provocation manslaughter defense.

■ In contrast, the court treated reckless manslaughter as a lesser-included offense to murder. *See State v. Howland,* 119 N.H. 413, 416, 402 A.2d 188, 190–91 (1979). As a result, the acquittal first instruction did have an impact upon the jury's consideration of that charge. We do not believe, however, that the instruction unfairly subordinated the defendant's reckless manslaughter defense. Jurors had to weigh the defendant's testimony against the evidence produced by the State to determine whether the State had met its burden of proving first degree or second degree murder. Accordingly, jurors necessarily considered the defendant's manslaughter defense and the acquittal first instruction did not unfairly subordinate his theory of the case.

■ Although we hold that an acquittal first instruction is the proper transitional instruction in New Hampshire, we recognize that there are circumstances in which the trial court may issue a reasonable efforts instruction. A situation in which that might occur is when the State and the defendant agree to a reasonable efforts instruction, either before the judge's charge, or, with the court's approval, when the jury is deadlocked.

*III. The Testimony of Michael Holmes*

The defendant's final argument is that the trial court erred in refusing to allow him to call Michael Holmes as a witness. According to the defendant's offer of proof, Holmes planned to testify that Horan, acting under the influence of alcohol, attacked him without provocation in 1992. The defendant hoped to use this specific incident to show that Horan became violent when he was drunk, thus allowing the defendant to argue that Horan — who was drunk and high on the night of the stabbing — provoked the defendant's attack.

Before trial, the court ruled that the defendant could introduce specific incidents of Horan's violent conduct to prove that he was the aggressor on the night of the stabbing. It found such evidence admissible under New Hampshire Rule of Evidence 405(b), which permits the introduction of specific incidents of conduct in cases where character is an essential element of a defense. *See* N.H. R. EV. 405(b). At trial, however, the court excluded Holmes' testimony for three reasons. First, it found that his testimony could not clearly link Horan's violent behavior to intoxication. As a result, his testimony lacked relevance given the defendant's theory that Horan provoked him because Horan was drunk. Second, it found that Holmes' testimony should be excluded under New Hampshire Rule of Evidence 403 because it would confuse the jury and waste time. Finally, the court found that Holmes' testimony should be excluded under Rule 403 because it was cumulative in light of testimony from doctors at Lakes Region General Hospital regarding Horan's violent nature.

We express no opinion on whether the court's pretrial ruling was proper because we find that the trial court did not abuse its discretion when it excluded Holmes' testimony at trial. We will not disturb a trial court's decision to exclude evidence under Rule 403 absent an abuse of discretion. *State v. Philbrook*, 138 N.H. 601, 603, 644 A.2d 66, 67 (1994). "To prevail on appeal, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.*

By the time the defendant attempted to call Holmes as a witness, the court had already allowed the testimony of two health care employees who had worked with Horan in a drug rehabilitation program. Both testified that Horan told them he became violent when he was drunk or high. One of those employees — Dr. William Walsh — told jurors that Horan "related to me that when he drank he frequently got into fights, and on this particular occasion that brought him into the hospital he'd been on a binge . . . during which

time he essentially trashed a girl's apartment." Dr. Walsh also told jurors that Horan admitted that he once assaulted a police officer while he was drunk. The other employee — Helga Garger — told jurors that Horan thought he could have killed someone if he did not get drug treatment.

The court was aware of this testimony at the time it excluded Holmes as a witness. As a result, we cannot say that the trial court abused its discretion in excluding Holmes under Rule 403. Given that the statements from Dr. Walsh and Helga Garger described prior incidents of violence related by the victim, it was reasonable to conclude that Holmes' testimony would have been cumulative and unduly time-consuming.

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.