Strafford
No. 96-244

THE STATE OF NEW HAMPSHIRE

v.

ALFRED THIBEDAU

September 26, 1997

*Steven M. Houran*, acting attorney general (*Richard J. Lehmann*, attorney, on the brief and orally), for the State.

*Donald E. Bisson*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. A jury convicted the defendant, Alfred Thibedau, of committing two counts of aggravated felonious sexual assault, *see* RSA 632-A:2, I(j)(2) (1996), against his niece. The defendant challenges the Superior Court's (*Mohl*, J.) ruling that the defendant "opened the door" to the admission of evidence of a prior sexual assault against the victim. We affirm.

The defendant's trial lasted two days. During cross-examination of the victim, defense counsel asked where a face cloth had come from when she had not testified about a face cloth during direct examination. The State objected. The trial court allowed the defense counsel to refresh the victim's recollection of a previously transcribed interview with a victim witness advocate during which she told the interviewer about the defendant's use of water from a wet face cloth as a lubricant to facilitate sexual intercourse when she was thirteen or fourteen. This incident is connected with the current charges. The transcript also referred to a similar incident occurring when the victim was six years old. After defense counsel instructed the victim to read to herself the portion of the transcript indicated, the following colloquy ensued:

> QUESTION: Do you recall an incident that you described with a face cloth?
>
> ANSWER: Yeah.
>
> QUESTION: And do you recall telling Sue Whitford that he used a face cloth, "like he squeezed it. He squeezed it over my private area?"
>
> ANSWER: Yeah.
>
> QUESTION: But you say — when I ask you now, you said that he was in the room with you and he never left the room at any time?

ANSWER: He didn't, that I can remember.

QUESTION: Did he have a wet face cloth in [the] pocket of his shorts?

ANSWER: Maybe. I don't know.

On redirect, the State sought to have the victim read into evidence the portion of the transcript that defense counsel instructed her to use to refresh her memory. At the resulting bench conference, the trial court stated that the defendant had opened the door for the admission of the information contained in this portion of the transcript. Defense counsel objected. The trial court concluded that the defendant raised the issue of the face cloth, which created an ambiguity in the testimonial evidence, and allowed the State to read into evidence the contested portion of the transcript:

QUESTION: When he was on top of you, did he just — and his private was in yours, did he just stay there or did he —

ANSWER: No. He moved and stuff, and it was hard for him to do that. I was telling him that it was hurting and he used — he was trying to use like, um, a — one time I remember he used, um a face cloth that was wet.

QUESTION: Mmhmm?

ANSWER: Or something to go through with it or whatever.

QUESTION: Okay. Was that this time or a different time that he used, I think, a face cloth?

ANSWER: It was both the times that I remember, once when I was six and then again when I was fourteen. I remember them clear as day, and both — were both the same time that he used the face cloth.

QUESTION: Okay. And how did he use the face cloth? What did he do with it?

ANSWER: He, like, squeezed it.

QUESTION: Okay. And where did he squeeze it?

ANSWER: He squeezed it over my private area.

QUESTION: Okay. You said that he had a hard time. Was that — you said that it hurt.

ANSWER: Mmhmm.

QUESTION: Was he saying something about it? How did he get — how did you get the impression that he was having a hard time?

ANSWER: Because he was, like — he [wasn't] very patient. You know what I mean? He was getting mad at me sometimes.

After the victim attested to the accuracy of the State's reading of the transcript, the trial court instructed the jury that the reason it had allowed the State to read the preceding portion of the interview was

only for you to judge [the victim's] credibility as a witness. It is not offered for the truth of the contents of the statement made. And to the extent that there is any reference to any incident other than the incident that the defendant is charged with here, you may not consider that evidence as evidence concerning whether the defendant committed the acts that are alleged in this case. It's admitted, as I said, only for purposes of whether or not you believe this witness as a witness in this case.

The State continued its redirect examination of the victim, further questioning her about the defendant's use of the face cloth. After presenting other witnesses, the State rested its case, and the defendant examined two defense witnesses before concluding its case. The jury found the defendant guilty of both counts of aggravated felonious sexual assault.

On appeal, the defendant asserts that he did not "open the door" to the admission of the prior sexual assault because his cross-examination of the victim did not create a false or misleading impression. See, e.g., State v. Trempe, 140 N.H. 95, 98-100, 663 A.2d 620, 622-23 (1995). Additionally, he contends that even if his cross-examination did create a misleading or false impression, the evidence of the prior assault did not refute it. Although the State disputes the contention that the trial court erred, it also argues that any error was harmless beyond a reasonable doubt.

■■ We need not determine whether the trial court properly admitted evidence of the prior assault because even assuming error,

the error was harmless. *See State v. Anderson*, 141 N.H. 168, 169, 679 A.2d 583, 584 (1996); *State v. Taylor*, 141 N.H. 89, 92, 677 A.2d 1093, 1095 (1996). The State bears the burden of proving that an error is harmless, a burden satisfied by proof beyond a reasonable doubt that the erroneously admitted evidence did not affect the verdict. *State v. Silk*, 138 N.H. 290, 291, 639 A.2d 243, 244 (1994). In deciding whether the State has met its burden, we consider the strength of the alternative evidence presented at trial. *See State v. Hennessey*, 142 N.H. 149, 158, 697 A.2d 930, 936 (1997); *State v. Vandebogart*, 139 N.H. 145, 158, 652 A.2d 671, 679 (1994). We also consider the character of the inadmissible evidence, including whether the evidence was cumulative or inconsequential in relation to the State's evidence. *See Vandebogart*, 139 N.H. at 158, 652 A.2d at 679.

A review of the record reveals that the strength of the alternative evidence was overwhelming. This evidence includes the victim's detailed testimony of the assault, including what she was wearing, what the defendant said, and how the defendant perpetrated the assault. The State also presented testimony of an admission by the defendant. The defendant's brother-in-law testified that the admission occurred once the defendant returned from the police station after giving a statement against his father regarding his father's sexual assaults on numerous family members. The brother-in-law testified that the defendant admitted that "[the defendant] shouldn't be throwing rocks at glass houses because [the victim] could put him away, and when that happened, he would have to deal with it." This testimony was corroborated by the defendant's sister, who testified that the defendant stated that "[the victim] could put him in jail and there was nothing that he could do about it."

In addition to the overwhelming alternative evidence, the inadmissible evidence was of little consequence given the plethora of references to other assaults the defendant committed. The victim testified — without objection — to other sexual assaults that the defendant committed upon her. She twice testified that there were several different occasions of sexual abuse by the defendant. She also testified about a conversation she had with the defendant that occurred before the perpetration of the charged assault, during which she asked the defendant if his sexual conduct with her was considered cheating on his girlfriend. The victim testified that the defendant did not consider it cheating because his actions conformed to the behavior of all men. Numerous witnesses testified about yet another sexual assault that occurred when the victim was sixteen or seventeen in which the defendant attempted to touch the

victim's breasts. In light of the admission of all the other evidence of uncharged sexual assaults, the evidence concerning the defendant's assault on the complainant when she was six years old was cumulative.

Furthermore, the disputed evidence was unobtrusive. *See Hennessey*, 142 N.H. at 158, 697 A.2d at 936. The transcript was read into evidence to rehabilitate the victim by demonstrating to the jury, contrary to the defendant's implication, that she had not changed her testimony since her previous interview. The evidence was not "lengthy, comprehensive, or directly linked to a determination of the guilt or innocence of the defendant." *Id.* at 159, 697 A.2d at 936 (quotation and brackets omitted). During a small portion of the State's closing argument, in an effort to rebut the defendant's argument that the victim was lying because of the alleged inconsistencies in her testimony, the State reviewed the portion of the transcript the State had read to the jury, including the reference to the uncharged assault.

█ Finally, the trial court took pains to limit the prejudicial impact of the evidence. *Taylor*, 141 N.H. at 93, 677 A.2d at 1096. The trial court carefully instructed the jury that it could use the evidence only to evaluate the victim's credibility, and not as evidence that the defendant committed the charged offense. As we have repeatedly stated, we presume that jurors follow limiting instructions. *See, e.g., State v. Collins*, 138 N.H. 217, 220, 637 A.2d 153, 155 (1994).

█ Considering the strength of the State's alternative evidence, the cumulative nature of the disputed evidence, and the manner in which the State used the disputed evidence, we are persuaded, beyond a reasonable doubt, that its introduction did not affect the jury's verdicts. *Hennessey*, 142 N.H. at 159, 697 A.2d at 937. We therefore hold that the error, if any, was harmless.

*Affirmed.*

All concurred.