Rockingham
No. 97-354

### THE STATE OF NEW HAMPSHIRE

v.

### ROBERT THERRIEN

December 13, 1999

*Philip T. McLaughlin*, attorney general (*N. William Delker*, attorney, on the brief and orally), for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant, Robert Therrien, appeals his conviction following a jury trial of one count of aggravated felonious

sexual assault, *see* RSA 632-A:2 (1986)(amended 1992, 1994, 1995, 1997, 1998). The defendant contends that the Superior Court (*Gray*, J.) erred by: (1) admitting evidence of other bad acts while excluding evidence that the defendant had been acquitted of committing those acts; and (2) allowing a therapist to testify to multiple incidents of abuse. We affirm.

The following facts were adduced at trial. The defendant's daughter, the victim, was in first grade when she lived with the defendant in Portsmouth. While in Portsmouth, the victim performed fellatio on her father. The defendant told her that he would go to jail if she told anyone about this incident. Soon after, the family moved to Maine. In 1995, the victim informed her mother about the assault that had occurred in Portsmouth. Before the defendant was tried for the Portsmouth assault, he was charged with and tried for sexual assaults against his daughter that allegedly occurred in Maine. He was acquitted of those charges.

On appeal, the defendant contends that the trial court erred in admitting evidence that the defendant had assaulted the victim in Maine while not admitting evidence that he had been acquitted of those charged acts. The defendant argues that crimes of which a defendant has been acquitted cannot be used as bad acts evidence.

During cross-examination of the victim, the defendant introduced a letter written by the victim to the defendant on June 8, 1995, in which the victim expressed her anger at the defendant for not supporting their family, not attending events in which she participated, and not paying for her car. The defendant then questioned the victim about the letter:

> Q: And would [the June 8th letter] have been an opportunity to say something to your father about this sexual abuse ten years before?
> A: Yes, it could have been.
> Q: But you chose not to say anything?
> A: Right.
> . . . .
> Q: And you never said anything to your father [about the abuse], either in writing or in person, right?
> A: Right.

At the end of cross-examination, a bench conference was held on whether the defendant opened the door to other allegations of sexual assault by introducing the June 8th letter into evidence. On redirect, the State had the victim read a portion of the June 8th letter that said, "Even when we were a family, you treated me with

no respect at all. You didn't treat me like a daughter, you treated me like *something else*, and I think you know what that is. I will never forget that. You don't know how wounded I am because of it." (Emphasis added.) The State, without objection, questioned the victim regarding the June 8th letter.

Q: Okay. Now, what did you mean by that when you said, "You treated me like something else"?
A: I meant he treated me like a sex object.
Q: Now, on what basis did you say that to him. Was it solely what you've told the jury so far today?
A: I'm sorry?
Q: [W]hy do you say in thinking to yourself that he was treating you like a sex object?
A: Because that's what he was doing.
Q: Okay. Now, you told the jury about what happened in Portsmouth so far today, is that correct?
A: Yes.
Q: Was there any other reason why you felt this way about your father?
A: Yes, [because] he did it many, many, many times.
Q: Okay. Now that we've got — we're going into this letter, how many times would you say your father had you perform fellatio?
A: I can't count that high.
. . . .
Q: Okay. When you were in Portsmouth, do you know how many times, about how many times it happened in Portsmouth?
A: No.
. . . .
Q: Where did you move after Portsmouth?
A: Auburn.
Q: Okay. Auburn, Maine?
A: Right.
Q: And when you were in Auburn, Maine, did this ever happen in Auburn, Maine?
A: Yes, it did.
Q: Okay. And by this, what — what do you mean? What happened in Auburn, Maine?
A: Performed sexual acts on my father, oral sex.

The defendant objected at this point, stating that the defendant had been acquitted of these acts in Maine. The State explained that the

testimony was offered only to explain a passage in the letter that the defendant had introduced. The court allowed the testimony.

Assuming, without deciding, that the defendant did not open the door to the allegations of abuse in Maine by introducing the letter, we find that the admission of this testimony was harmless error given the victim's other testimony to which the defendant did not object. *See State v. Thibedau*, 142 N.H. 325, 328-29, 702 A.2d 299, 300-01 (1997).

> The State bears the burden of proving that an error is harmless, a burden satisfied by proof beyond a reasonable doubt that the erroneously admitted evidence did not affect the verdict. In deciding whether the State has met its burden, we consider the strength of the alternative evidence presented at trial. We also consider the character of the inadmissible evidence, including whether the evidence was cumulative or inconsequential in relation to the State's evidence.

*Id.* at 329, 702 A.2d at 301 (citations omitted).

■ The victim testified without objection that her father treated her like a sex object and had her perform fellatio many times not only in Portsmouth but also in Maine. The defendant's objection came after all of this testimony. We, therefore, find that the State has demonstrated beyond a reasonable doubt that the evidence, if incorrectly admitted, was cumulative and any error is harmless. *See id.*

■ The defendant also alleges that the trial court erred in not admitting evidence of the acquittal of the Maine acts. The State alleges that this argument has not been preserved for appellate review. We agree. The defendant asked the victim on recross examination:

Q: [Y]ou're telling the jury that there were accusations in Maine, right?
A: Right.
Q: Do you want to tell the jury what happened to those accusations?
The Court: Counsel.
[State]: Objection.
(BEGIN BENCH CONFERENCE)
The Court: I kind of hoped you'd know better, but this jury is not going to hear anything about Maine accusations or

the result of Maine accusations. They came out to explain what she meant — her story as to what she meant in the letter, but you're not going to introduce a court result in Maine in an attempt to show this jury that they should do the same thing. Only you've gone too far already. I don't know.

[Defense Counsel]: Okay.

(END OF BENCH CONFERENCE)

[Defense Counsel]: I'll withdraw the question, your Honor.

The Court: The jury will disregard the question.

(Pause)

[Defense Counsel]: I have no further questions, your Honor.

By withdrawing the question, the defendant has waived his argument that his acquittal of the Maine charges was admissible. We therefore find that this issue was not preserved for our review. *Cf. Hudon v. City of Manchester*, 141 N.H. 420, 422, 686 A.2d 306, 307 (1996) (agreement by plaintiffs that claims against two defendants could be dismissed waives plaintiffs' ability to attack court's order granting motion to dismiss); *State v. Newcomb*, 140 N.H. 72, 81-82, 663 A.2d 613, 619 (1995) (issue not preserved where defendant withdrew request for relief from counsel's ineffectiveness depriving court of the opportunity to rule).

■ Finally, the defendant contends that the trial court erred in allowing the victim's social worker to testify that the victim was abused by her father until she was thirteen years old. The State again contends that this issue has not been preserved for our review. We again agree. On redirect, the State asked the social worker:

Q: Okay. Now, you were asked about her disclosing a history of sexual abuse on direct examination. Did she tell you how long that abuse lasted until, how old she was when that abuse ended?

A: She did tell me that.

Q: And how old was it she told you —

[Defense Counsel]: Objection, your Honor.

Q: — that the abuse ended?

The Court: Just a moment. Basis?

[Defense Counsel]: Well, it's — this is not alleged in the indictment.

The defendant's objection put the court on notice that the State was, in the defendant's mind, trying to put before the jury crimes not alleged in the indictment. The argument presented in the defen-

dant's brief and at oral argument, however, is that the door to other allegations of sexual abuse, as was alleged by the State at trial, was not opened by defense counsel's question to the therapist about the victim's "history of abuse." This objection to the therapist's testimony was not clearly presented to the trial court, *see State v. Seymour*, 142 N.H. 620, 625-26, 707 A.2d 130, 133 (1998), and therefore was not preserved for our review, *State v. Sullivan*, 142 N.H. 399, 403, 702 A.2d 339, 342 (1997).

*Affirmed.*

All concurred.