Hillsborough-southern judicial district
No. 97-560

THE STATE OF NEW HAMPSHIRE

v.

CHARLES DORVAL, JR.

December 16, 1999

*Philip T. McLaughlin*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief and orally), for the State.

*Pizzimenti & Immen*, of Concord (*Dennis Pizzimenti* on the brief and orally), for the defendant.

THAYER, J. The defendant, Charles Dorval, Jr., appeals his first degree murder conviction. *See* RSA 630:1-a,I(b)(2) (1996). He contends that the Superior Court (*Hollman*, J.) erred by: (1) not suppressing statements he made to an informant after invoking his *Miranda* rights; and (2) excluding certain statements as hearsay. We affirm.

The parties agree to the following facts. Two elderly sisters were murdered in their Hudson home. The defendant was suspected of the crime based, in part, on information that John Heinemann provided to the police. During the course of the investigation, the defendant was sentenced to sixty days at the Hillsborough County

Jail as a result of violating parole. There, Sergeant Robert Drew of the Hudson Police and Sergeant David Crawford of the State Police interviewed the defendant about the murders. The three-hour meeting took place in the jail library. The sergeants did not read the defendant his *Miranda* rights before the interview began. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Toward the end of the meeting, the sergeants asked a series of questions that caused the defendant to request to speak to his lawyer. The interview then ended and the defendant was returned to his cell.

The defendant's cellmate was an informant whom the State Police recruited to befriend the defendant and elicit information about the murders. On the day of the meeting, the informant had been fitted with a body wire. When the defendant returned to his cell after the meeting, he confessed to his cellmate that he had committed one of the murders.

Prior to trial, the defendant moved to suppress the statements made to the informant, alleging that the meeting with Sergeants Crawford and Drew amounted to a custodial interrogation. Therefore, after he asserted his *Miranda* rights, the police could not later question him through the informant. The defendant contends that by doing so, the sergeants violated his right against self-incrimination as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Part I, Article 15 of the New Hampshire Constitution.

We look to our State Constitution first "and then, if necessary, to the Federal Constitution to determine whether it provides the defendant with greater protection." *State v. Grant-Chase*, 140 N.H. 264, 266, 665 A.2d 380, 382 (1995), *cert. denied*, 517 U.S. 1140 (1996). "We cite decisions of the Supreme Court of the United States and of courts of other jurisdictions for their helpfulness in analyzing and deciding the State issue. Since we conclude that the Federal Constitution is not more favorable to the petitioner, we make no separate federal analysis." *Id.* (quotation and citations omitted).

■■ In order for *Miranda* warnings to be required there must be a custodial interrogation by the police. *See State v. Graca*, 142 N.H. 670, 675, 708 A.2d 393, 396 (1998). "[While] we will not overturn the factual findings [of the trial court] unless they are contrary to the manifest weight of the evidence, we review the ultimate determination of custody *de novo*." *State v. Ford*, 144 N.H. 57, 63, 738 A.2d 937, 942 (1999). "[W]hen an individual is incarcerated for an offense unrelated to the subject of his interrogation, custody for *Miranda* purposes occurs when there is some act

or circumstance that places additional limitations on the prisoner." *Id.* at 63, 738 A.2d at 943.

■ The trial court found that the defendant was not in custody for *Miranda* purposes at the time of the meeting with the two sergeants. The interview was relatively short and conducted in an amicable way by the plain-clothed sergeants. The defendant was not restrained or in handcuffs and was told that he could leave at any time and did not have to talk to the sergeants. Moreover, the questioning was done in the jail library. *Ford,* 144 N.H. at 64, 738 A.2d at 943 (interview not coercive where conducted in correctional officers' lunch room). The mere fact that the defendant was alone with the sergeants during the questioning does not mean that he was in custody. *Id.* at 64, 738 A.2d at 943. On these facts, we affirm the trial court's decision that the defendant was not in custody for *Miranda* purposes. Because the defendant was not in custody when questioned by the police, the defendant's argument that he could not be questioned further without counsel because he validly invoked his *Miranda* rights is, as the defendant concedes, without merit.

The defendant next contends that the trial court erred by not allowing the defendant to cross-examine Sergeant Drew about statements Heinemann made about the crime scene. The State objected to the statements as hearsay, and the trial court sustained the objection. The defendant contends that Heinemann's statements were not offered for their truth, but rather to show that Heinemann knew detailed information regarding the crime scene.

Assuming, *arguendo*, that the trial court's ruling was erroneous, any error was harmless. *See State v. Thibedau,* 142 N.H. 325, 328-29, 702 A.2d 299, 300-01 (1997). "The State bears the burden of proving that an error is harmless, a burden satisfied by proof beyond a reasonable doubt that the erroneously [excluded] evidence did not affect the verdict." *Id.* at 329, 702 A.2d at 301. In determining that an error was harmless, we consider, *inter alia*, whether the evidence was cumulative or inconsequential. *Id.*

■ The defendant was able to introduce evidence that Heinemann knew: the layout of the house; that food was being prepared in the kitchen; some of the victims' wounds; and certain items taken from the house. Admission of more cumulative evidence of Heinemann's knowledge would not have added to the defendant's theory that the perpetrator was Heinemann and not the defendant. Additionally, while the jury was aware that Heinemann claimed to have received the detailed information about the crime scene from the defendant, the jury was also made aware that Heinemann

credited various different sources for his information, including a psychic vision and conversations with individuals other than the defendant. We therefore hold that the State has demonstrated beyond a reasonable doubt that the evidence, if incorrectly excluded, was cumulative and that the defendant was not prejudiced. *See id.; cf. State v. McPherson*, 127 N.H. 826, 829, 508 A.2d 1076, 1078 (1986) (State did not demonstrate that statements improperly excluded as hearsay would have had no effect on jury if admitted and therefore error was not harmless).

Issues raised in the defendant's notice of appeal but not addressed in his brief are waived. *See State v. Colbert*, 139 N.H. 367, 370, 654 A.2d 963, 965-66 (1995).

*Affirmed.*

All concurred.