Dorval v. NHSP Warden                    CV-01-26-B     10/09/01

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Charles Dorval, Jr.

        v.                              Civil No. 01-026-B
                                        Opinion No. 2001DNH184
Warden, New Hampshire State Prison


MEMORANDUM AND ORDER

Charles Dorval, Jr., is currently serving a sentence of life without parole in the New Hampshire State Prison for first degree murder. He has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the trial court erred in admitting into evidence statements that he made to a jailhouse informant. Because I conclude that Dorval's argument lacks merit, I dismiss his petition.


I. BACKGROUND

On November 11, 1995, two elderly sisters, Doris Bean and Loretta Allen, were found dead in their Hudson, New Hampshire home. Dorval was a suspect in the ensuing murder investigation.

In the midst of the investigation, Dorval was sentenced to sixty days in the Hillsborough County Jail for violating the

terms of his parole.  On February 16, 1996, the last full day of Dorval's sentence, Sergeant Robert Drew of the Hudson Police Department and Sergeant David Crawford of the New Hampshire State Police came to the jail to discuss the murder investigation with Dorval.

Sergeants Drew and Crawford spoke with Dorval for approximately three hours in the jail library.  Dorval was neither handcuffed nor otherwise restrained during the interview. Moreover, Sergeant Crawford told Dorval that he did not have to speak with them if he did not want to.  As the meeting was coming to an end, Dorval asked to speak to an attorney.  The questioning then ceased and Dorval returned to his cell.

Dorval later made incriminating statements to his cellmate. Unbeknownst to Dorval, the cellmate was an informant for the New Hampshire State Police.  Based on Dorval's incriminating statements, he was charged with the murder of Loretta Allen. Dorval moved to suppress the statements, arguing that the police obtained them in violation of his Fifth Amendment rights under Miranda v. Arizona, 384 U.S. 436 (1966).  He claimed that his conversations with the informant were a form of custodial interrogation that could not lawfully occur because he had

-2-

invoked his right to counsel during his earlier interrogation by Sergeants Drew and Crawford.

The trial court denied Dorval's motion, concluding that his attempt to invoke his right to counsel was not effective because he was not "in custody" for purposes of the Fifth Amendment when he asked to speak with an attorney. See Order dated Aug. 1, 1997 on Def.'s Mot. to Suppress ("Suppression Order"), at 95-109, attached as part of Exhibit D to Warden's Answer to Dorval's Pet., (Doc. No. 7). In explaining its decision, the trial court noted that other courts have held that a defendant is not in custody for purposes of determining his Miranda rights simply because he is incarcerated on an unrelated charge. Id. at 99 (citing United States v. Menzer, 29 F.3d 1223, 1231 (7th Cir. 1994), and Cervantes v. Walker, 589 F.2d 424, 427 (9th Cir. 1978)). The trial court went on to state that an inmate who is incarcerated for an unrelated offense is in custody for purposes of Miranda only if he is "limited beyond the usual conditions of his confinement." Id. at 99-100 (internal citations and quotation marks omitted). Moreover, the court said that "[t]his determination is made by examining 'the totality of the circumstances,' including the individual's freedom to leave the

interview, as well as the purpose, place and length of the interview." Id. at 100 (quoting Menzer, 29 F.3d at 1232).

After reviewing the "totality of the circumstances," the trial court concluded that Dorval was not in custody when he met with Sergeants Crawford and Drew. Id. at 100-01. The court found as follows:

> The interview of [Dorval] was relatively short in duration and was conducted in an amicable, almost friendly tone. At no time did the interview become confrontational or accusatory. [Dorval] never became upset; nor did he ask to leave the room. [Dorval] was not restrained or handcuffed during the interview. He knew both of the police officers (who were dressed in plain clothes). The officers told [Dorval] that he did not have to talk with them and that he was free to leave any time. All [Dorval] had to do was tell the corrections officer that he wanted to leave the room and he would have been returned to his cell. The interview was conducted in the jail library, a large open room which would not create a feeling of further restraint or limitation. Moreover, [Dorval] was not deprived of any privileges or services that he would have otherwise received. Finally, as soon as [Dorval] expressed an interest in talking with an attorney, the officers terminated the interview.
>
> [Dorval] did not believe that there was any restriction on his liberty during the interview beyond that of his ordinary confinement at the jail. Moreover, a reasonable person in [Dorval]'s position would not have believed that he was in any greater custody. Therefore, [Dorval] was not in police custody for Miranda purposes on February 16, 1996, and accordingly the Miranda warning was

-4-

not required.

Id. Because Dorval had not been subject to custodial interrogation, the court reasoned, he could not have invoked his Fifth Amendment right to counsel during the interview. Id. at 101-02. Therefore, the police did not violate his Miranda rights by later using an informant to question him. See id. at 103-06.

Dorval's statements to the informant were admitted at trial and a jury convicted him of murdering Allen. On appeal, the New Hampshire Supreme Court affirmed the trial court's ruling. State v. Dorval, 144 N.H. 455, 456-58 (1999). Dorval subsequently filed the instant petition for a writ of habeas corpus.

## II. STANDARD OF REVIEW

I may grant Dorval's petition for a writ of habeas corpus only if the adjudication of his claims in state court: (1) "resulted in a decision that was contrary to . . . clearly established [f]ederal law, as determined by the Supreme Court of the United States;" or (2) "involved an unreasonable application" of such law. 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 402-13 (2000) (interpreting § 2254(d)); Williams v. Matesanz, 230 F.3d 421, 424-25 (1st Cir. 2000). In this context,

-5-

"clearly established federal law, as determined by the Supreme Court of the United States" refers to the holdings of the Supreme Court as of the time of the relevant state-court decision. See Williams, 529 U.S. at 412.

Accordingly, I must first ascertain whether the state court's decision was contrary to relevant Supreme Court precedent. See id. at 404-06; Williams, 230 F.3d at 426. A decision is contrary to Supreme Court precedent if the state court: (1) applied a rule that contradicts the governing law set forth by the Supreme Court; or (2) reached a different result than the Supreme Court arrived at in a case involving materially indistinguishable facts. See Williams, 529 U.S. at 404-08; Williams, 230 F.3d at 424-25; see also Ramdass v. Angelone, 530 U.S. 156, 165-66 (2000) (plurality opinion of Kennedy, J.). In essence, this initial inquiry requires Dorval to show that "Supreme Court precedent *requires* an outcome contrary" to that reached by the state court. Williams, 230 F.3d at 425 (quoting O'Brien v. Dubois, 145 F.3d 16, 24-25 (1st Cir. 1998)).

If the state court's decision was not contrary to Supreme Court precedent, I must then ask whether the state court's decision involved an "objectively unreasonable" application of

clearly established federal law, as determined by the Supreme Court. See Williams, 529 U.S. at 407-11; Phoenix v. Matesanz, 233 F.3d 77, 80-81 (1st Cir. 2000); Williams, 230 F.3d at 425. A decision is not objectively unreasonable solely because I conclude that the state court applied the law erroneously or incorrectly. See Williams, 529 U.S. at 409-12. Rather, to be objectively unreasonable, the state court's application of law must be so erroneous or incorrect as to fall "outside the universe of plausible, credible outcomes." Williams, 230 F.3d at 425 (quoting O'Brien, 145 F.3d at 25); see Williams, 529 U.S. at 409-11 (rejecting the "reasonable jurist" standard as impermissibly subjective).

In reviewing a petition for a writ of habeas corpus, a federal court must accept the state court's resolution of the factual issues unless the petitioner can establish by clear and convincing evidence that the state court determined the facts incorrectly. See 28 U.S.C. § 2254(e)(1). I apply these standards in reviewing Dorval's petition.

## III.  DISCUSSION

The trial court's order denying Dorval's motion to suppress

is based upon the premise that Dorval's invocation of his right to counsel would bar the police from later using an informant to elicit incriminating statements from him only if Dorval was "in custody" for purposes of the Fifth Amendment when he asked to speak with an attorney. Dorval accepts the premise but argues that the trial court unreasonably determined that he was not in custody.[1] He claims that Supreme Court precedent requires a finding that a suspect is in custody for purposes of determining his Miranda rights whenever he is detained in a jail facility. The trial court declined to adopt this per se approach to the problem and instead employed a totality-of-the-circumstances test. In my view, the court's use of a totality-of-the-circumstances test was not unreasonable.

The Supreme Court decision that is closest to the point is Mathis v. United States, 391 U.S. 1 (1968). There, the Court rejected the government's proposal for a per se rule that a

---

[1] The trial court's premise is, in any event, not an unreasonable application of Supreme Court precedent. As the Supreme Court observed in McNeil v. Wisconsin, "[w]e have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than 'custodial interrogation' . . . ." 501 U.S. 171, 182 n.3 (1991). Moreover, none of the court's decisions suggests that it would reach this result if the question were squarely presented.

-8-

suspect can invoke his <u>Miranda</u> rights only if he is in custody for the matter about which he is to be questioned. <u>See</u> <u>id.</u> at 4-5. The Supreme Court has never adopted the converse preposition that a suspect must always be deemed to be in custody for purposes of <u>Miranda</u> even if he is being detained on other charges. Moreover, the trial court's use of a totality-of-the-circumstances test fits comfortably within an established body of lower court precedent that treats the issue in the same way. <u>See</u> <u>United States v. Chamberlain</u>, 163 F.3d 499, 502 (8th Cir. 1999); <u>Menzer</u>, 29 F.3d at 1231-32; <u>Garcia v. Singletary</u>, 13 F.3d 1487, 1492 (11th Cir. 1994); <u>United States v. Smith</u>, 7 F.3d 1164, 1167 (5th Cir. 1993); <u>United States v. Willoughby</u>, 860 F.2d 15, 23 (2d Cir. 1988); <u>United States v. Conley</u>, 779 F.2d 970, 972-74 (4th Cir. 1985); <u>Cervantes</u>, 589 F.2d at 427-29. Thus, I reject Dorval's claim that the trial court's failure to use a per se rule when determining whether he was in custody represents an unreasonable application of Supreme Court precedent.[2]

---

[2] Although Dorval does not expressly press the point, I also reject any claim that the trial court unreasonably applied its totality-of-the-circumstances test to the facts of Dorval's case. The trial court offered a detailed and persuasive explanation for its determination that Dorval was not in custody. Its resolution of the issue certainly is not unreasonable. <u>See</u> Suppression Order at 100-01.

While I need go no further to dispose of Dorval's habeas corpus claim, I note that it is defective for a more fundamental reason. Even if Dorval had successfully invoked his Fifth Amendment right to counsel, his request to speak with an attorney before undergoing further interrogation would not bar the police from later using an informant to surreptitiously elicit incriminating statements from him.[3]

In Edwards v. Arizona, the Supreme Court explained:

> The Fifth Amendment right identified in Miranda is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right Edwards invoked . . . .

451 U.S. 477, 485-86 (1981) (emphasis added). Thus, even if a suspect properly invokes his Fifth Amendment right to counsel, his subsequent statements to the police will not be suppressed unless they are the product of custodial interrogation.

This rule is determinative here because the Supreme Court also has held that a suspect's Miranda rights are not implicated

---

[3] Dorval wisely does not assert that the police violated his Sixth Amendment right to counsel because his right to counsel under the Sixth Amendment had not attached when he made his incriminating statements. See Texas v. Cobb, 532 U.S. 162, ___, 121 S. Ct. 1335, 1340 (2001).

-10-

when the police use a jailhouse informant to elicit incriminating statements from him.  See <u>Illinois v. Perkins</u>, 496 U.S. 292, 296-300 (1990); <u>see</u> <u>also</u> <u>United States v. Stubbs</u>, 944 F.2d 828, 831 (11th Cir. 1991) (prior invocation of Fifth Amendment right to counsel does not bar use of later uncounseled statements to undercover agent).  Thus, Dorval's attempt to invoke his Fifth Amendment right to counsel, regardless of its effectiveness, does not prevent the police from later using a jailhouse informant to question him about his crimes.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, I conclude that Dorval's argument lacks merit.  Accordingly, I dismiss his petition for a writ of habeas corpus (Doc. No. 1).

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


October 9, 2001

cc:  Dennis Pizzimenti, Esq.
     Kelly A. Ayotte, Esq.

-11-