Strafford
No. 2000-193

THE STATE OF NEW HAMPSHIRE

v.

LAWRENCE COOK

Argued: October 9, 2002
Opinion Issued: December 20, 2002

*Philip T. McLaughlin*, attorney general (*Elizabeth A. Dunn*, attorney, on the brief and orally), for the State.

*Michael J. Sheehan*, of Concord, by brief and orally, for the defendant.

DALIANIS, J. The defendant, Lawrence Cook, appeals his conviction on eight counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (1996), and eight counts of felonious sexual assault, *see* RSA 632-A:3 (1996), following a jury trial in Superior Court (*Mohl*, J.). On appeal, the defendant argues: (1) the jury in his first trial effectively found him not guilty, making his second trial unconstitutional; (2) he was in custody at the time of his interrogation, requiring suppression of his statements; (3) the admission of photographs of the victim was unfairly prejudicial; (4) the trial court erred by not giving his requested jury instruction; and (5) the jury should not have been given a transcript, which was not admitted into evidence, during deliberations. We affirm.

The relevant facts follow. Upon receipt of a report concerning allegations that J.K., a minor female, had been sexually abused by the defendant, an investigating officer interviewed her. The officer obtained authorization for a "one-party intercept" of a telephone conversation between the victim and the defendant, during which the defendant made incriminating statements, became emotional and talked about killing himself.

Immediately after the conversation, two investigating officers traveled to the defendant's workplace at Pease Air National Guard Base to interview him. To arrange the interview, the officers called the head of security, Sergeant Sullivan, who told the defendant that there were police officers in the main foyer who wanted to talk to him, and that if he was ready Sullivan would direct or take him to them. The defendant met the officers and led them to a place where they could talk privately. One officer explained why they were there and told the defendant that he did not have to talk with them, but did not advise him of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The defendant expressed his willingness to talk. During the interview, he made several incriminating statements. After approximately thirty minutes, the defendant left the room to meet with his wife, who had arrived at the base. After consulting with her, he informed the officers that he had decided not to cooperate any further. The interview then ended and the officers left the base. The defendant was arrested one or two days later when he turned himself into the Rochester Police.

In September 1999, the defendant was tried on twenty-eight counts of aggravated felonious sexual assault and twenty-eight counts of felonious sexual assault alleging that he had committed four acts of assault each

season, between the summer of 1990 and the fall of 1993. At trial, the victim testified that the assaults stopped after she told him "no" during a trip to New Jersey for a Thanksgiving holiday, but she could not remember which year. The defendant offered evidence that the only trip to New Jersey over a Thanksgiving holiday occurred in 1991, arguing that he was not guilty of any offenses alleged to have occurred after that date.

During deliberations, the jury sent a note to the judge stating: "1. We unanimously agree that the defendant committed acts of FSA and AFSA against JK during the period of Summer 1990 through Fall 1991. 2. The way the indictments are structured, using seasonal timeframes, we cannot agree unanimously as to which specific acts were committed during each *specific* timeframe." The court then determined that the jury had deadlocked and declared a mistrial. The defendant did not object.

After the mistrial, the jury foreman sent a letter to the prosecutor offering advice for the retrial, telling him, "The Thanksgiving trip to NJ (when the abuse ended)—[y]ou've got to clear the date up," because two jurors could not find when the assaults occurred beyond a reasonable doubt, while the timing "didn't matter" to the remaining jurors.

In November 1999, the defendant was retried on ten counts of aggravated felonious sexual assault and ten counts of felonious sexual assault alleging that he had committed four acts of assault each year from 1989 to 1993. The defendant filed a pre-trial motion to dismiss, arguing that a second trial would be unconstitutional in light of the foreman's letter. The motion was denied.

Immediately before trial, the defendant filed a motion to exclude photographs of the victim as she appeared in each year the conduct was alleged to have occurred. The trial court denied the motion.

At trial, the victim testified to the alleged conduct, while a defense witness, Pamela Cook, provided testimony that, if believed, would disprove the victim's accusations. During the jury charge, the trial court included an instruction that "the testimony of a victim of a sexual assault does not require corroboration." The defendant then asked the trial court to give the same instruction about Cook's testimony. The trial court refused.

Also during the jury charge, the trial court stated that the jury would have access to the tape of the one-party intercept that was played at trial and admitted into evidence as well as the tape transcript, which, while given to the jurors during trial as a guide, was never admitted into evidence. While the defendant had not objected to the use of the transcript during trial, he objected to the jurors' access to it during deliberations. The trial court noted the objection but allowed the transcript to go with the jury. The defendant was convicted on sixteen counts. This appeal followed.

The defendant first argues that his second trial violated the Double Jeopardy Clauses of both the New Hampshire and United States Constitutions. Under both the New Hampshire and United States Constitutions, a defendant is protected from multiple prosecutions for the same offense. *See* N.H. CONST. pt. I, art. 16; U.S. CONST. amend. V. We consider the defendant's argument first under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), relying upon federal decisions only for guidance. *See id.* at 233. Because, on the issue before us, federal law provides the defendant no greater protection than does the State Constitution, we will not undertake a separate federal analysis. *See State v. Fitzgerald*, 137 N.H. 23, 26 (1993).

The trial court may declare a mistrial where a jury is genuinely deadlocked without prohibiting a retrial. *See State v. Crate*, 141 N.H. 489, 491-92 (1996). On appeal, the defendant argues that the jury was not genuinely deadlocked but had effectively found him not guilty. At trial, because the defendant asserted that he was not guilty of any offenses alleged to have occurred after the Thanksgiving holiday in 1991, the trial court instructed the jurors that the State was required to prove that each act occurred within the timeframe alleged. Pointing to the excerpt of the foreman's letter in which he states that two jurors found that the timeframes of the assaults were not proven by the State and that the timeframes "didn't matter" to the remaining jurors, the defendant argues that the jury had effectively found that the State failed to meet its burden of proof.

■ The defendant's argument fails, however, because the foreman's post-mistrial letter was not admissible evidence to impeach the mistrial. We recognize the well-established rule that the affidavit or testimony of a single juror is admissible in exculpation of himself, or to sustain a verdict, but is inadmissible where it is offered as a basis for setting the verdict aside. *Bunnell v. Lucas*, 126 N.H. 663, 668 (1985). Thus, "evidence regarding the jurors' motives, beliefs, misunderstandings, intentions and the like is immaterial and may not be considered" in a motion to set aside a verdict. *Kravitz v. Beech Hill Hosp.*, 148 N.H. 383, 387 (2002). While a mistrial is not a verdict, we will apply this rule where the mistrial directly results from the jurors' inability to reach a verdict because the conduct of the jury during deliberations is similarly at issue. Accordingly, we have no basis to conclude that the jury was not, in fact, deadlocked.

The defendant next argues that because he was in custody during his interrogation, the failure of the officers to read him his *Miranda* rights rendered his statements inadmissible. We address the defendant's State constitutional argument first, citing to federal law only as an aid to our

analysis. *Ball*, 124 N.H. at 233. Because our State Constitution affords the defendant greater protection than does the Federal Constitution with regard to the defendant's rights under *Miranda*, we need not conduct a separate federal constitutional analysis. *State v. Aubuchont*, 147 N.H. 142, 146 (2001).

"Before the defendant's statements made during a custodial interrogation may be used as evidence against him, the State must prove, beyond a reasonable doubt, that he was warned of his constitutional rights, that he waived those rights, and that any subsequent statements were made knowingly, voluntarily and intelligently." *State v. Johnson*, 140 N.H. 573, 577 (1995). However, where a person is not subject to a custodial interrogation, the defendant's right to *Miranda* warnings does not attach. *State v. Carroll*, 138 N.H. 687, 696 (1994).

██ Whether a defendant is in custody for purposes of *Miranda* is essentially a question of fact, and we will uphold the trial court's finding unless contrary to the manifest weight of the evidence or the result of an error of law. *See id.* A person is in custody if formally arrested or restrained to the degree associated with formal arrest. *See id.* If there has been no formal arrest, the trial court must determine the degree to which the suspect's freedom of movement was curtailed, and how a reasonable person in the suspect's position would have understood the situation. *Johnson*, 140 N.H. at 578.

█ The trial court found that the defendant was not in custody because he was not ordered to talk to the officers and a reasonable person would have felt free to leave. The record supports the trial court's finding. The defendant expressed his willingness to talk and was able to leave the room to meet with his wife during the interview. When he indicated that he did not want to cooperate any further, the interview was terminated. We are not persuaded by the defendant's argument that, while not ordered to talk to the officers, he reasonably believed that he had to talk because Sullivan, a military officer, escorted him to the officers. No military personnel were present during the interrogation, and Sullivan neither required the defendant to meet with the officers nor pressured him to talk. Accordingly, the trial court properly admitted the defendant's statements.

The defendant next argues that the photographs of the victim should have been excluded because they were irrelevant and unfairly prejudicial. Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *See* N.H. R. Ev. 401. Evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* N.H. R.

EV. 403. The admissibility of evidence is committed to the sound discretion of the trial judge, and such a ruling will not be disturbed on appeal unless there has been an unsustainable exercise of discretion. *See In re Antonio W.*, 147 N.H. 408, 414 (2002).

█ The trial court found that the evidence was relevant to the credibility of J.K. and would help the jury to "understand . . . in a visual way that at the time these events are alleged that she was a young child." We agree with the defendant that the prejudice created by the admission of these photographs substantially outweighed their limited probative value. The jurors were aware that J.K. was a child at the time the incidents were alleged to have occurred, and her credibility could have been tested with that knowledge alone. The photographs added little to the jurors' evaluation of her testimony. Moreover, there was a risk that the admission of the photographs would elicit sympathy from the jury when testimony of the alleged conduct was juxtaposed with the images of the young child. *Cf. Marcotte v. Timberlane/Hampstead School Dist.*, 143 N.H. 331, 346-47 (1999). Therefore, the trial court erred by admitting the photographs.

█ The State maintains that any error in admitting this evidence was harmless. "The State bears the burden of proving that an error is harmless, a burden satisfied by proof beyond a reasonable doubt that the erroneously admitted evidence did not affect the verdict. In deciding whether the State has met its burden, we consider the strength of the alternative evidence presented at trial." *State v. Therrien*, 144 N.H. 433, 436 (1999) (quotation omitted). The State argues that the evidence of the photographs was inconsequential compared to the other evidence offered at trial. We agree. J.K. testified that the defendant kissed or touched her mouth, chest, vagina, and "butt" at least once each year within the timeframe that the State alleged. One of the officers who interviewed the defendant testified that he admitted to kissing J.K. on the lips and kissing and touching her vagina. The officer further testified that the defendant admitted that his actions occurred more than once and did not deny J.K.'s allegation that they had occurred over a period of years. During the intercepted phone conversation, the defendant repeatedly apologized to J.K. for his actions and told her that he did not remember all of the times they had occurred. In light of this alternative evidence, the admission of the photographs was harmless beyond a reasonable doubt.

The defendant next argues that the trial court's refusal to give his requested instruction concerning Pamela Cook's testimony violated his right to due process of law under the New Hampshire Constitution because the jury charge, as given, unfairly emphasized J.K.'s testimony and implied "that a lesser burden applied to [J.K.'s] testimony than to Ms. Cook's." "A

jury must be instructed adequately and accurately on the relevant law, and whether or not a particular instruction is necessary is left to the trial court's sound discretion." *State v. Seymour*, 140 N.H. 736, 744, *cert. denied*, 519 U.S. 853 (1996). The trial court did not give the requested instruction, finding that it would improperly highlight Cook's testimony.

In *State v. Marti*, 143 N.H. 608 (1999), we upheld a jury instruction that explained to the jury, "with respect to each of the charged offenses corroboration of the testimony of the victim is not required." *Id.* at 616 (brackets omitted); *see* RSA 632-A:6, I (1996). We reasoned that, read in the context of the entire charge, the instruction correctly stated the law and did not improperly imply the jury "*must* find the defendant guilty if they found the uncorroborated testimony of the victim credible." *Marti*, 143 N.H. at 617.

■ Here, the trial court gave a nearly identical charge to that in *Marti*. *See id.* at 616-17. The trial court instructed the jury in accordance with the law applicable to the charged offenses. *See* RSA 632-A:6, I. The statute states only that the victim's testimony needs no corroboration, not other witnesses who testify at trial. *See id.* We disagree with the defendant that the trial court's jury instruction implied that Cook's testimony needed corroboration to be believed. The trial court instructed the jury to consider the credibility of each witness and to determine the appropriate weight to accord each witness's testimony. The trial court's instruction made clear that the jury was free to believe Cook's testimony rather than J.K.'s and to find that the State had failed to meet its burden of proof. Thus, we conclude that the trial court was within its discretion to refuse to give the requested instruction.

■ Finally, the defendant argues that the trial court erred when it permitted the one-party intercept transcript to accompany the tape into the jury deliberation room. "It is a fundamental rule that jurors may not receive evidence out of court." *Brigham v. Hudson Motors, Inc.*, 118 N.H. 590, 595-96 (1978) (quotation omitted). This rule precludes jurors from having access to items not admitted into evidence during deliberations. *Id.* at 596. Because the transcript was never admitted into evidence, we agree with the defendant that it was improperly sent with the jury into the deliberation room.

■ The State argues that any error was harmless while the defendant contends that, because the transcript was present during deliberations, the jury could have improperly focused upon the taped conversation over other non-recorded, non-transcribed testimony. We find the State's argument persuasive. The jurors had access to the transcript during trial

and were permitted to use it as a guide without objection. Moreover, they had access to the tape during deliberations, which the defendant does not challenge, and could study its content with or without the transcript. We fail to see how the presence of the transcript increases the likelihood that the jury would improperly focus upon the content of the tape where the tape itself was also available. *See United States v. Costa*, 691 F.2d 1358, 1363 (11th Cir. 1982). Accordingly, we agree with the State that the presence of the transcript could not have affected the verdict and was harmless error. *Cf. Therrien*, 144 N.H. at 436.

*Affirmed.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.