Strafford
No. 99-647

THE STATE OF NEW HAMPSHIRE

v.

EDWARD B. PEHOWIC

October 3, 2001

*Philip T. McLaughlin*, attorney general (*Kelly A. Ayotte*, senior assistant attorney general, on the brief and orally), for the State.

*Carl D. Olson*, assistant appellate defender, of Littleton, by brief and orally, for the defendant.

NADEAU, J. The defendant, Edward Pehowic, appeals his conviction by jury in the Superior Court (*Mohl*, J.) on one count of first degree murder, *see* RSA 630:1-a (1996), arguing that the trial court erred when it failed to

suppress his confession, which was taken in the absence of counsel. We affirm.

The facts are uncontested, and were detailed in the superior court's order as follows. In September 1996, Sergeant Tucker of the Portsmouth Police Department was assigned to investigate the case of Carol Caswell, a missing person. In early 1998, Thomas Hart of the Strafford County Attorney's office, who had been investigating the defendant in relation to an assault on Patricia Landry, contacted Sergeant Tucker. On February 4, 1998, Tucker interviewed Landry. Landry told Tucker that during the assault, the defendant told her that he had killed Carol Caswell and dumped her body.

On February 27, 1998, Tucker and Hart went to the Strafford County House of Corrections where the defendant was being held awaiting trial on the Landry assault charges. The defendant was represented by counsel on those charges. Tucker testified that he went to the jail to see if the defendant would talk about Carol Caswell, and had no intention of asking the defendant anything about the assault on Landry.

Tucker and Hart entered the jail through the public entrance and were passed through to the visitation room where they waited for the defendant. The doors leading into the visiting room were electronically locked and were controlled by a guard in the control area. When the defendant entered the room, he was not shackled or handcuffed. Tucker, Hart and the defendant were the only people in the room. Tucker and Hart introduced themselves to the defendant. They told him they were investigating the disappearance of Carol Caswell and asked if he would be willing to talk with them. The defendant said he had read about Carol Caswell in the newspaper. He said he might be willing to talk with them, but he wanted to speak with his attorney first and he would want an attorney present during any discussions with the police. Tucker told the defendant not to waste everyone's time if he had no information. The defendant repeated that he would like to speak with his attorney before speaking with police. Tucker gave the defendant his card and told him to have his attorney call Tucker if he wanted to talk. Tucker testified that the entire encounter lasted only a few minutes.

On March 2, 1998, Attorney Rothstein, who was representing the defendant on the Landry assault charges, sent a letter to Tucker stating that the defendant "does not wish to speak with any law enforcement official," and advising Tucker to call Attorney Rothstein if he wished to speak further with the defendant. Tucker did not contact Rothstein.

On March 19, 1998, Tucker held a meeting to advise other jurisdictions that Carol Caswell had been murdered somewhere in the area. The Somersworth Police Department, New Hampshire State Police, and the

Maine State Police became involved in the investigation. In addition, Detective Thomas Stinglen of the Dover Police Department noted similarities between the Carol Caswell case and the unsolved murder of Sheila Holmes. Stinglen was aware that Tucker had previously contacted the defendant regarding the Carol Caswell case. Stinglen and Tucker discussed whether the defendant had invoked his rights and determined that it was immaterial since the Sheila Holmes investigation was a separate matter.

On March 30, 1998, Stinglen called the jail and arranged a time to speak with the defendant. Stinglen told jail personnel not to tell the defendant he was coming. At the jail, Stinglen waited in the doorway of the visiting room. He could hear the defendant speaking loudly to a guard as he approached the secured door. The defendant was saying he did not want to speak with anyone, and he did not care who it was. When the defendant saw Stinglen, he thought Stinglen was from a local newspaper. Stinglen told him he was from the Dover Police Department. The defendant said he did not want to speak with anyone. Stinglen made a comment to the effect of, "If I were a murderer, I'd want a lawyer too." The defendant became upset and asked Stinglen if he was calling him a murderer. The defendant then turned and left. Stinglen testified that the incident lasted only two to three minutes, and the defendant never passed through the door into the visiting room.

There were subsequent meetings between the defendant and Tucker, and on April 7-8, 1998, the defendant, without benefit of counsel, was interrogated and confessed to the murder of Carol Caswell.

On January 12, 1999, the defendant filed a motion to suppress his statements made to the police during these encounters. The defendant argued that during the February 27, 1998 meeting and again during the March 31, 1998 meeting he properly invoked his Fifth Amendment right to counsel, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and accordingly Sergeant Tucker was precluded from initiating contact with him at subsequent meetings. *See Edwards v. Arizona*, 451 U.S. 477, 485 (1981).

On June 29, 1999, the superior court issued a thirty-one page order denying the defendant's motion. At that time, this court had not yet addressed the question whether a prisoner was necessarily "in custody" for purposes of *Miranda*. After examining the relevant federal cases, the trial court ruled that the defendant's invocation of his right to counsel was ineffective because he was not "in custody." *See State v. Graca*, 142 N.H. 670, 675 (1998). The trial court reasoned that in order for an incarcerated defendant to be "in custody," there must be some additional restraints

upon his liberty beyond those normally imposed by virtue of his status as an inmate.

On July 21, 1999, this court issued its opinion in *State v. Ford*, 144 N.H. 57 (1999), holding that "when an individual is incarcerated for an offense unrelated to the subject of his interrogation, custody for *Miranda* purposes occurs when there is some act or circumstance that places additional limitations on the prisoner." *Id.* at 63. Our holding was based upon Part I, Article 15 of the State Constitution. We further stated that the Federal Constitution affords no greater protection than the State Constitution with regard to a defendant's rights under *Miranda*. *See id.* Five months later in *State v. Dorval*, 144 N.H. 455 (1999), we reaffirmed our holding in *Ford*, again basing our holding upon the State Constitution. *See id.* at 456.

■ The defendant does not argue that there was some act or circumstance that placed additional limitations upon him. Therefore, we conclude that the defendant was not in custody when he made his confession. In light of this conclusion, and because the right to counsel had not attached, the fact that the defendant's attorney indicated by letter that the defendant did not wish to speak with the police was irrelevant. *See Moran v. Burbine*, 475 U.S. 412 (1986).

The defendant argues that our conclusions regarding the Federal Constitution's protection in this area were in error, and that a prisoner is necessarily "in custody" for purposes of the Fifth Amendment. Specifically, the defendant suggests we ignored the United States Supreme Court decision in *Mathis v. United States*, 391 U.S. 1 (1968), and its progeny. We disagree. In *Mathis*, it was uncontested that the defendant was in custody. The central holding of that case was that "nothing in the *Miranda* opinion . . . calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody." *Id.* at 4-5. The Court did not address the separate question whether imprisonment necessarily constitutes "custody" for purposes of the Fifth Amendment. *See United States v. Menzer*, 29 F.3d 1223, 1231 (7th Cir. 1994) (citing cases from the Second, Fourth, Eighth and Ninth Circuit Courts of Appeal holding that imprisonment does not *per se* mean "custody").

"When a defendant is already incarcerated at the time of interrogation, the traditional custody analysis is inappropriate because, by its very nature, a prison setting restrains the freedom of movement of its inmates." *Ford*, 144 N.H. at 63 (*citing United States v. Conley*, 779 F.2d 970, 973 (4th Cir. 1985), *cert. denied*, 479 U.S. 830 (1986)).

■ Additionally, *Mathis* must be read in light of more recent developments in the Supreme Court's jurisprudence. The Court has suggested that "[t]he bare fact of custody may not in every instance require a warning even when the suspect is aware that he is speaking to an official." *Illinois v. Perkins*, 496 U.S. 292, 299 (1990) (holding that undercover officer's questions posed to defendant in prison need not be preceded by *Miranda* warnings because there was no compulsion or coercion); *see also People v. Alls*, 629 N.E.2d 1018, 1019 (N.Y. 1993). Accordingly, we reject the defendant's arguments that the Fifth Amendment is necessarily implicated every time an officer asks questions of a prisoner.

The Fifth Amendment of the Federal Constitution and Part I, Article 15 of the State Constitution are both vindicated if *Miranda* warnings are given when there are acts or circumstances that place additional limitations on the interrogated prisoner. *Ford*, 144 N.H. at 63; *Dorval*, 144 N.H. at 456-57. The essential characteristic of custodial interrogation is the subjugation of the person being questioned to obvious police authority, which restricts customary freedom. It may seem artificial to assert that a person serving a prison sentence or one confined to a jail has freedom of movement. While it is obvious prisoners do not enjoy absolute freedom, it is a reality of incarceration, however, that a level of free movement does exist within understood limits.

In this case the defendant does not challenge the trial court's findings that there were no additional restraints placed upon his liberty beyond those normally imposed upon an inmate on the dates in question, so we do not address those findings.

*Affirmed.*

BROCK, C.J., and BRODERICK and DALIANIS, JJ., concurred.