# United States Court of Appeals
## For the First Circuit

---

No. 00-1204

REESE WILLIAMS, JR., A/K/A OMAR ABDUR RAHIM,

Petitioner, Appellant,

v.

JAMES MATESANZ,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lipez, Circuit Judge.

---

Willie J. Davis, with whom Davis, Robinson & White, LLP, was on brief, for appellant.
Elizabeth Klein Frumkin, Assistant Attorney General, Commonwealth of Massachusetts, with whom Thomas F. Reilly, Attorney General, was on brief, for appellee.

---

October 25, 2000

---

**SELYA, Circuit Judge.** Asserting that a state trial judge's jury instructions incorrectly described the prosecution's burden of proof, petitioner-appellant Reese Williams, Jr., sought habeas corpus relief in the federal district court. He now appeals the district court's order of dismissal.

Because the petitioner filed his habeas application on September 10, 1997, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified in scattered sections of 28 U.S.C.), governs his case. Bui v. DiPaolo, 170 F.3d 232, 235 (1st Cir. 1999) (holding that the AEDPA applies to habeas proceedings instituted on or after April 24, 1996). The neoteric standard of review imposed by the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000). Relying upon our formulation of this new constraint, O'Brien v. Dubois, 145 F.3d 16, 24-25 (1st Cir. 1998), the district court determined that the AEDPA precluded relief in this situation. Because O'Brien is congruent with the Supreme Court's subsequent holding in Taylor, we affirm.

## I. BACKGROUND

In its present posture, this appeal does not require us to canvass the evidence leading to the petitioner's quarter-century-old conviction for first-degree murder. Accordingly, we turn directly to the travel of the case, referring the reader who hungers for a more detailed account of the underlying facts to the opinion of the Massachusetts Supreme Judicial Court (SJC) rejecting the petitioner's direct appeal. See Commonwealth v. Williams, 391 N.E.2d 1202, 1205 (Mass. 1979).

The Commonwealth charged the petitioner with participating in an armed robbery that resulted in the slaying of a shopkeeper. The petitioner unsuccessfully interposed an alibi defense and a claim of mistaken identity. Although the evidence depicted the petitioner's alleged confederate as the actual triggerman, a petit jury, instructed on the Massachusetts felony-murder rule, found the petitioner guilty of first-degree murder on May 16, 1973. The trial judge sentenced him to life imprisonment. The SJC affirmed the conviction. Id. at 1216.

Roughly sixteen years later, the petitioner sought post-conviction relief. He based his claim on newly-decided cases that appeared to call into serious question the trial judge's repeated references in his jury instructions to a "moral certainty" criterion. In the petitioner's view, these

-4-

references reduced the prosecution's burden of proof below the constitutionally required standard.

A justice of the superior court — not the original trial justice, who had died during the intervening years — rejected this contention in a meticulously reasoned rescript. See Commonwealth v. Williams, Crim. No. 96965 (Mass. Super. Ct. Aug. 2, 1996) (St. Ct. Op.). The petitioner's attempts to secure further review in the Commonwealth's courts were unsuccessful.

Having exhausted his state remedies, the petitioner instituted a federal habeas proceeding. He again posited that the state trial court's extensive use of the phrase "moral certainty" had violated his right to due process and rendered his trial fundamentally unfair. The district court, accepting the report and recommendation of a magistrate judge, applied the AEDPA standard as elucidated in O'Brien, 145 F.3d at 24, and dismissed the application. The court did, however, grant a certificate of appealability. See 28 U.S.C. § 2253(c)(1). This appeal followed.

## II. THE HABEAS STANDARD

The AEDPA directs federal courts to refuse a writ of habeas corpus at the behest of a state prisoner unless the underlying state adjudication

-5-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1). In O'Brien, we determined that this statute requires a federal habeas court first to assess whether the state court acted contrary to a legal rule prescribed by the Supreme Court. 145 F.3d at 24. In the absence of a controlling rule (or if the state court correctly identified the controlling rule), the federal habeas court then proceeds to determine "whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an unreasonable application of Supreme Court precedent." Id.

We decided O'Brien without explicit guidance from the Supreme Court. Last term, however, the Court spoke to the same general set of questions and identified two classes of cases in which the AEDPA permitted federal courts to grant habeas relief to state prisoners. Taylor, 120 S. Ct. at 1519. This taxonomy is essentially the same as the two-step pavane limned in O'Brien: the first category embraces cases in which a state court decision directly contravenes Supreme Court precedent, and the second embraces cases in which a state court decision, although not "contrary to" relevant Supreme Court precedent, nonetheless constitutes an "unreasonable application" of

-6-

relevant Supreme Court precedent. Given this parallelism, we conclude that O'Brien correctly anticipated Taylor, and thus remains good law.

Taylor and O'Brien, read together, shed some helpful light on how section 2254(d)(1) operates. For example, in discussing when a state court decision would be contrary to clearly established Supreme Court case law, the Taylor Court noted that "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." 120 S. Ct. at 1519. The Court added that "[a] state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Id. at 1519-20. These statements dovetail with our earlier observation that the "contrary to" prong of section 2254(d)(1) imposes a burden on the petitioner to "show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." O'Brien, 145 F.3d at 24-25 (emphasis supplied). Explicating what was meant by this requirement, we stated that "the key inquiry . . . is whether a Supreme Court rule — by virtue of its factual similarity (though

not necessarily identicality) or its distillation of general federal law precepts into a channeled mode of analysis specifically intended for application to variant factual situations — can fairly be said to require a particular result in a particular case." Id. at 25.

Taylor and O'Brien also inform the second prong of the model established by section 2254(d)(1). They teach that federal habeas relief may lie in favor of a state prisoner when a state court correctly identifies the applicable federal rule but applies it in an unreasonable manner to the facts of a particular case. Taylor, 120 S. Ct. at 1520. "This reduces to a question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable." O'Brien, 145 F.3d at 25; accord Taylor, 120 S. Ct. at 1521-22 (holding that the assessment of unreasonableness demands an objective analysis). Because this objective standard is broader than the "reasonable jurist" standard, Taylor, 120 S. Ct. at 1521-22; O'Brien, 145 F.3d at 25 n.7, the mere fact that some fair-minded judges might find a particular outcome unreasonable does not warrant relief. Nor does the existence of error, in and of itself: there is, for this purpose, an important distinction between unreasonable applications and incorrect applications. See Taylor, 120 S. Ct.

at 1522 ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."); O'Brien, 145 F.3d at 25 (recognizing that the "unreasonable application" clause does not allow a federal court to grant habeas relief simply because it disagrees with the state court's decision or because it would have reached an opposite conclusion).  In the last analysis, a state court decision is objectively unreasonable only if it falls "outside the universe of plausible, credible outcomes." O'Brien, 145 F.3d at 25.

## III.  APPLICATION OF THE HABEAS STANDARD

We turn now from the general to the specific.  The Constitution requires that the prosecution, in a criminal case, prove the defendant's guilt beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  Here, the petitioner claims that the state trial judge's repeated references to proof to a "moral certainty" left in the jurors' minds an indelible impression that the prosecution's burden of proof was something less than beyond a reasonable doubt.  We examine this premise, subject to the stark limitations imposed by the AEDPA.

**A**

Before Congress enacted the AEDPA, a federal court's exercise of habeas corpus jurisdiction did not require that it pay any special heed to the underlying state court decision. E.g., Brown v. Allen, 344 U.S. 443, 458 (1953) (observing that the habeas court treats the state court decision as nothing more than "the conclusion of a court of last resort of another jurisdiction"). The AEDPA amendments alter the legal landscape, placing the state court's decision at center stage in a federal habeas proceeding. O'Brien, 145 F.3d at 20. "Only if that decision deviates from the paradigm described in section 2254(d) can a habeas court grant relief." Id.

In this instance, the relevant state court decision is the state superior court's denial of post-conviction relief.[1] Consequently, we focus not on the adequacy of the jury instructions per se, but, rather, on the reasonableness of the state court decision upholding those instructions.

**B**

We inquire, first, whether the relevant state court decision is contrary to existing federal law as enunciated by

_____

[1]Although a single justice of the SJC, acting pursuant to Mass. Gen. Laws ch. 278, § 33E, effectively upheld this ruling by denying leave to appeal, he did so principally by embracing "the thorough analysis of the issues made by the Superior Court judge . . . ."

-10-

the Supreme Court.  Taylor, 120 S. Ct. at 1519; O'Brien, 145 F.3d at 24.  Here, we answer that inquiry in the negative.

The Supreme Court has directly addressed the use of the phrase "moral certainty" in jury instructions.  E.g., Victor v. Nebraska, 511 U.S. 1, 10-17, 21-22 (1994); Cage v. Louisiana, 498 U.S. 39, 40-41 (1990), overruled on other grounds by Estelle v. McGuire, 502 U.S. 62 (1991).  But the standard laid out by these cases is open-ended and its application requires perscrutation of the specific facts of each particular case. See Victor, 511 U.S. at 6 ("The constitutional question in the present cases, therefore, is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [reasonable doubt] standard.").  For this reason, the state superior court decision can run aground on section 2254(d)(1)'s "contrary to" prong only if that court either applied the wrong law or reached a conclusion opposite to that reached by the Supreme Court on nearly identical facts.  See Taylor, 120 S. Ct. at 1519-20; O'Brien, 145 F.3d at 25.

Neither situation obtains here.  The state superior court identified the appropriate Supreme Court case law — notably, Victor and Cage — and recognized its relevance. Moreover, the state trial judge's jury instructions were quite

-11-

different from those that the Supreme Court previously had considered.

To be sure, the statute's "contrary to" tine may pierce a state court decision if the latter is "diametrically different from, opposite in character or nature from, or mutually opposed to" Supreme Court precedent. Taylor, 120 S. Ct. at 1520. Here, however, none of these characterizations fits. A state court decision that applies the correct legal rule but reaches an independent outcome on different facts cannot be deemed to run at cross purposes to Supreme Court precedent. Id. Accordingly, section 2254(d)(1)'s "contrary to" prong cannot be used here to spearhead habeas relief.

## C

This brings us to the second step of the requisite analysis: whether the state court decision constitutes an unreasonable application of clearly established Supreme Court case law. Taylor, 120 S. Ct. at 1519; O'Brien, 145 F.3d at 24-25. For purposes of this inquiry, a federal court operates within a closely circumscribed sphere. Its determination cannot be based simply on whether the state court reached the correct result when applying federal law. See O'Brien, 145 F.2d at 25 ("We think it is pellucid . . . that the 'unreasonable application' clause does not empower a habeas court to grant the

writ merely because it disagrees with the state court's decision, or because, left to its own devices, it would have reached a different result."). Rather, the federal habeas court must determine whether the state court's application of the law to the facts, as evidenced by the conclusion that it reached, was objectively unreasonable. Taylor, 120 S. Ct. at 1521-22. Measured by this yardstick, we believe that the state court's decision, though problematic, is not "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." O'Brien, 145 F.3d at 25 (footnote omitted).

As the state superior court recognized, the salient Supreme Court precedents in this situation are Victor and Cage. Both of these cases dealt disapprovingly with the use of the phrase "moral certainty" in jury instructions on reasonable doubt. The cases, however, reached different results. The Cage Court found the particular instructions used there misleading, and granted the writ. Cage, 498 U.S. at 41. In contrast, the Victor Court found a different set of jury instructions adequate notwithstanding the trial judge's references to moral certainty. Victor, 511 U.S. at 17, 22.

The lesson of these cases is that context is all-important and that careful scrutiny must be afforded to the

-13-

setting in which "moral certainty" references appear.  See id. at 16 (explaining that "moral certainty language cannot be sequestered from its surroundings").  Using this mode of analysis, the habeas court must determine whether the remainder of the jury instructions provide sufficient cover to assure that the "moral certainty" language did not impermissibly dilute the "beyond a reasonable doubt" standard.  See id. at 21.

A side-by-side comparison of Cage and Victor illustrates this point.  In Cage, the trial judge's very brief charge described "reasonable doubt" as a "grave uncertainty" and an "actual substantial doubt," and led the jury to believe that it needed to find the defendant guilty to a "moral certainty." Cage, 498 U.S. at 40.  The Court found this unacceptable because:

> [T]he words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard.  When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

Id. at 41 (footnote omitted).  In other words, nothing in the instruction lent a constitutionally appropriate gloss to moral

-14-

certainty.  <u>Victor</u>, 511 U.S. at 16 (explaining the holding in <u>Cage</u>).

In contradistinction, the jury instructions in <u>Victor</u> were not so sparse.  The Court described the situation as follows:

> The jury in [this] case was told that a reasonable doubt is 'that state of the case which, <u>after the entire comparison and consideration of all the evidence</u>, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.'  The instruction thus explicitly told the jurors that their conclusion had to be based on the evidence in the case.  Other instructions reinforced this message. . . .

> We do not think it reasonably likely that the jury understood the words 'moral certainty' either as suggesting a standard of proof lower than due process requires or as allowing conviction on factors other than the government's proof.

<u>Victor</u>, 511 U.S. at 16 (internal citations omitted; emphasis in original).  Accordingly, the Court concluded that the discouraged phrase ("moral certainty") had been given a concrete meaning not inconsistent with proof beyond a reasonable doubt, and thus did not undermine the convictions.  <u>Id.</u> at 16-17, 22.

Against this backdrop, we focus the lens of our inquiry on the state superior court's decision and ask whether the court's application of the analytic framework dictated by the

-15-

relevant Supreme Court precedents was objectively unreasonable. See Taylor, 120 S. Ct. at 1522; O'Brien, 145 F.3d at 25.

The state superior court plainly understood the primacy of context. In its rescript denying the petitioner's post-conviction motion for a new trial, the court carefully considered the trial judge's jury instructions as a whole. Citing cases such as Commonwealth v. Gagliardi, 638 N.E.2d 20, 25 (Mass. 1994), the court acknowledged that employment of the phrase "moral certainty" had come under fire in recent years. St. Ct. Op. at 6-7. It proceeded to recount the Cage Court's reasoning, see 498 U.S. at 40-41, concentrating on why the Supreme Court found the trial judge's reference to "moral certainty" misleading. St. Ct. Op. at 7-8.

The court followed this exercise by discussing the concept of proof beyond a reasonable doubt. Id. at 11-12. It then undertook a painstaking inquiry into the use of the phrase "moral certainty" in the jury instructions given in this case (the pertinent portions of which are set forth in an appendix to this opinion). The court had noted early on that the trial judge had used the term no fewer than fourteen times. Id. at 9. It now catalogued and dissected each reference, and reviewed the context to determine whether in practical effect the reference

-16-

tended to erode the trial judge's statement of the constitutionally required burden of proof. Id. at 10-16.

In its careful examination, the court plodded phrase by phrase through the instructions. It found support at each step along the way for its ultimate conclusion that the instructions, though containing several references to the discouraged phrase ("moral certainty"), did not dilute the standard of proof below a reasonable doubt. We need not recite book and verse as to each perception, but, rather, offer a few examples that convey the flavor of the examination.

The court acknowledged that the trial judge had begun by defining "proof beyond a reasonable doubt" as "proof to a moral certainty," a standard instruction theretofore approved by the SJC. E.g., Gagliardi, 638 N.E.2d at 24 n.3; Commonwealth v. Little, 424 N.E.2d 504, 506-07 & n.4 (Mass. 1981). But the judge did not dilute the Commonwealth's burden. Indeed, in most instances where "moral certainty" references appeared, an explanatory statement appeared in the immediate vicinity, thus providing a clear (and constitutionally correct) explication of the level of guilt required. E.g., St. Ct. Op. at 12 (equating "moral certainty" with a statement that "any reasonable doubt of the existence of any fact . . . which is essential to the proof of guilt of this defendant requires acquittal"). In this way,

-17-

the judge reminded the jury that its decision had to be based on the evidence in the case — a concept that he reinforced at the end of the reasonable doubt instruction when he emphasized the need for the jury to find guilt beyond a reasonable doubt, based on the <u>facts</u>.  <u>Id.</u> at 13.

The superior court's confidence in the efficacy of these reminders was bolstered by the trial judge's inclusion of similar redeeming statements in other portions of the charge. <u>Id.</u> at 14-15.  The court ascertained that each individual reference met the constitutional standard, and that the references, collectively, met the constitutional standard.  <u>Id.</u> at 15-16.  In this regard, it specifically found that the valid definition of proof beyond a reasonable doubt, contained early in the charge, when combined with the trial judge's repeated references to the appropriate standard in both his summary of the evidence and his recital of the law, foreclosed any possible confusion in the jurors' minds.  <u>Id.</u>  Finally, the court concluded that "the charge, taken as a whole, could not have led a reasonable juror to apply the wrong standard or use the instructions incorrectly."  <u>Id.</u> at 16.

To be sure, it is possible to argue the accuracy of this conclusion.  Indeed, had the case come before us on direct appeal, we might well have decided it otherwise.  After all, the references to "moral certainty" were numerous, and the risk of

error seems readily evident.  The test, however, is not whether we think that the state court reached the right result.  Taylor, 120 S. Ct. at 1522; O'Brien, 145 F.3d at 25.  When assessing a state prisoner's conviction under the AEDPA amendments, we can ask only whether the specific conclusion that the state court drew from its contextual examination was clearly outside the realm of reasonable outcomes.  Taylor, 120 S. Ct. at 1522; O'Brien, 145 F.3d at 25.  In this case, it was not:  the state court's conclusion constitutes an objectively reasonable (though not inevitable) application of the relevant Supreme Court precedents.

The proof of the pudding is that the state superior court's approach drew heavily upon clearly established Supreme Court case law.  E.g., Victor, 511 U.S. at 10-17, 21-22; Cage, 498 U.S. at 40-41.  It followed the method of those decisions meticulously.  Any argument over the correctness of the state court's ultimate conclusion would be one of degree, calling for a choice between credible, although mutually opposed, views.  That ends our inquiry.  When there are two plausible outcomes that can result from a reasoned application of clearly established Supreme Court precedent to a particular set of facts, the state court's choice between those outcomes, whether right or wrong, cannot constitute a basis for habeas relief under the second branch of section 2254(d)(1).  Accordingly, the

district court did not err in denying the application for a writ.

**IV. CONCLUSION**

We are not without empathy for the petitioner's situation. Assisted by able counsel, he saw the Supreme Court's emerging jurisprudence as a possible avenue to a new trial — only to have Congress's adoption of a restrictive standard of review for state prisoners' habeas applications transform that avenue into a dead end. We can question the wisdom of the AEDPA regime insofar as it pertains to habeas cases, but we cannot question Congress's authority to adopt that regime. The state superior court, in denying post-conviction relief, complied therewith and rendered an objectively reasonable (if arguable) decision. We are statutorily constrained to defer to that decision, notwithstanding our misgivings about the correctness vel non of the jury instructions. Under the AEDPA, we can go no further.

**Affirmed.**

# Appendix

(Excerpts from the state trial judge's reasonable doubt instructions; references to **"moral certainty"** highlighted.)

What then is proof beyond a reasonable doubt, you may ask.  In all criminal cases the defendant is entitled to have a verdict of not guilty rendered unless the Commonwealth proves to a degree of certainty which is expressed by the phrase "beyond a reasonable doubt," the existence of a state of facts that under the law constitutes the defendant's guilt of the crime charged.

Proof beyond a reasonable doubt, Mr. Foreman, ladies and gentlemen of the jury, means proof to a **moral certainty**.  This does not mean proof to a mathematically accurate certainty, it means proof to a **moral certainty**.  Proof beyond a reasonable doubt does not mean proof beyond all doubt, nor does it mean proof beyond a whimsical or fanciful doubt, nor does it mean proof beyond all possibility of innocence.  If the rule of law were that proof beyond a reasonable doubt meant proof beyond all possibility of innocence, virtually all criminals would go free and the administration of justice in the Courts of this Commonwealth and elsewhere would be impossible.  If an unreasonable doubt or mere possibility of innocence should be deemed enough to prevent conviction in this or in any case, practically every criminal would be free.  Such a rule would be wholly absurd.

A fact is proved beyond a reasonable doubt when it is proved to a **moral certainty**

as distinguished from an absolute or mathematical certainty. When it is proved to a certainty, that degree of certainty that satisfies the judgment and conscience of you ladies and gentlemen of the jury as reasonable men and women and leaves in your minds as reasonable men and women a settled conviction of guilt, but if when all is said and done there remains in the mind of you jurors any reasonable doubt of the existence of any fact or facts which is essential to the proof of guilt of this defendant, the defendant must have the benefit of it and he cannot be found guilty upon the charge.

Now here is a definition of reasonable doubt which was given one hundred twenty years ago, and I shall read it to you.

It is not mere possible doubt, because everything relating to human affairs and depending upon moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction to a **moral certainty** of the truth of the charge. All presumptions of law independent of evidence are in favor of innocence, and every person is presumed to be innocent until he is proven guilty. If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal, for it is not sufficient to establish a probability, though a strong one, arising from the doctrine of chance that the fact charged is more likely to be true than the contrary, but the evidence must establish the truth of the fact to a reasonable and to a **moral certainty**, a certainty that convinces and directs the understanding and satisfies the reason and the judgment of those who are bound to act conscientiously upon it, a

certainty which you would like to have reached, all of you, when you make a determination of some great significance in your own personal lives. That is the type of certainty which you should reach, a **<u>moral certainty</u>**.

You must ask yourselves, now, does the evidence which you have heard here establish beyond a reasonable doubt such facts as in their turn show to the same degree of certainty, that is to say, a **<u>moral certainty</u>** that the defendant did unlawfully participate in the taking of the life of Andrew Fillios. If this is not shown, he is to be acquitted. If it is shown, he is to be convicted. The defendant's right to hold the Government to the strictest of proof is an absolute right. No consideration of public safety, no righteous indignation, no atrocity of crime or zeal for the suppression of crime can give to the Court or to you jurors the reason to relax the rule of law or to explain the evidence to any conclusion not warranted by fair and convincing forces. I should fail in my duty if I did not with equal emphasis remind you that the community is not safer if only the rights of those charged with crime are recognized and guarded. The right of the Commonwealth to have a verdict commensurate with its proof is as absolute and is as sacred as the right of the defendant's in this case that, it shall not have more.

\*　　　\*　　　\*

(Excerpts from the summary of the evidence and recital of the law found in later portions of the jury instructions; references to **"moral certainty"** highlighted.)

. . . the sole question for your determination here is, have you been convinced beyond a reasonable doubt that [petitioner] participated with Adams in the killing of Fillios. If you have a reasonable doubt that he participated with Adams, then you shall acquit him. If you have been convinced to a **moral certainty** that he participated with Adams in the killing of Fillios, then you shall find him guilty. . . . If the two acted together and you are convinced of it beyond a reasonable doubt, then you will find him guilty. If you have a reasonable doubt that he participated with Adams, then you will acquit him.

. . . .

Now these pieces of testimony from Adams, from [petitioner], and from [P]olice [S]ergeant Scalese, and from the other witnesses and all of them, Kelly, Cargianes, the other witnesses whom you heard here, all of this testimony you will consider in determining this issue. Having considered it all, you will give to it such weight as you think it is entitled to have. The sole question here is, have you been convinced beyond a reasonable doubt, to a **moral certainty**, that [petitioner] participated in the commission of the crime . . . . If you find and you are satisfied to a **moral certainty** that he did, if you find and you are satisfied to a **moral certainty** that he did participate with Adams, [petitioner] on the theory of concert of action must be found guilty.

. . . If you have a reasonable doubt as to [petitioner's] participation, you will acquit him. If you are convinced to a **moral certainty** of his participation in the crime, and therefore, of his guilt, you shall find him guilty.

-24-

. . . .

　　　If after your consideration of all the evidence there lurks in your minds' eye a reasonable doubt that [petitioner] participated in the commission of the crime of murder with Adams, then you shall find him not guilty.

　　　If, on the other hand, you have reached a point in your unanimous minds' eye where you have been convinced to a **<u>moral certainty</u>**, and beyond a reasonable doubt, that [petitioner] did participate in the commission of the crime, aided and abetted by Adams or aiding and abetting Adams, then you shall find him guilty.

. . . .

　　　For emphasis I repeat:  If you have unanimously a reasonable doubt, you shall acquit; and when the Clerk inquires of you, Mr. Foreman, you shall respond "Not guilty." If, on the other hand, you have been convinced to a **<u>moral certainty</u>** of guilt and have determined the degree of murder, then, Mr. Foreman, you shall answer with the single word "guilty" . . . .