**Anthony PAGANO, Petitioner**

**v.**

**Steve ALLARD, Respondent.**

**No. CIV.A. 01–10599–EFH.**

United States District Court,
D. Massachusetts.

Sept. 12, 2002.

David J. Nathanson, Committee for Public Counsel Services, Boston, MA, for Petitioner.

Thomas F. Reilly, Attorney General's Office, James J. Arguin, Assistant Attorney General, Boston, MA, for Respondent.

## MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

This Order is in response to petitioner's First Amended Petition for Writ of Habeas Corpus. Following approximately one full day of testimony and two days of deliberation, a Massachusetts Superior Court jury found the Petitioner Anthony Pagano guilty of committing armed robbery while masked of a gas station convenience store. Mass.Gen.L. ch. 265, § 17. The Massachusetts Appeals Court affirmed the conviction by written opinion. *Commonwealth v. Pagano,* 47 Mass.App. Ct. 55, 710 N.E.2d 1034 (1999). The Massachusetts Supreme Judicial Court denied further appellate review. *Commonwealth*

v. *Pagano*, 430 Mass. 1104, 714 N.E.2d 826 (1999). Pagano has now petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Among other grounds, Pagano argues that he was deprived of his right to due process when the state prosecutor made a statement during closing argument that diluted his right to be presumed innocent of the crime charged. This Court agrees that the prosecutor infringed petitioner's constitutional right to be presumed innocent. *See Taylor v. Kentucky*, 436 U.S. 478, 486, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Further, this Court agrees that the prosecutor's misconduct so infected petitioner's trial with unfairness that his conviction amounted to a denial of due process. *See Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d·431 (1974). Finally, this Court concludes that the Massachusetts Appeals Court's decision denying petitioner relief was an unreasonable application of Supreme Court precedent, and thus, the writ must be granted. 28 U.S.C. § 2254(d)(1).

## I. FACTUAL BACKGROUND

The robbery for which the petitioner was convicted took place about 10:00 p.m. on the night of September 9, 1996, at a PetroPlus gas station on Salem Street in Malden, Massachusetts. According to the evidence presented at trial, Karim Slaoui, who was working as a cashier in the convenience store attached to the gas station, spotted someone walking around the gas pumps looking toward the convenience store. This man, who was later described as "the lookout" for the robbery operation, was wearing a black mask over his face. Suspecting this masked-man to be a sign of impending trouble, Slaoui was about to leave the convenience store to warn his co-workers at the pumps.

At this time, Slaoui was confronted by a second man who was also wearing a black mask so that Slaoui could only make out his eyes. This second man stuck a gun against Slaoui's stomach and repeated the demand "give me the money" several times. Although the robber's face was covered by the black mask, Slaoui discerned a peculiar "bluish" hue to the robber's eyes and, after listening to the robber's voice, recognized him as a regular customer of the store whom he knew by the name of Eric Wright. When Slaoui referred to him by the name Eric, the robber responded: "My name is not Eric, just give me the money." Slaoui reluctantly complied with the demand by opening the cash register. The robber took the money and walked away with the man who had been acting as lookout. The entire encounter lasted about a minute or two.

When Karim Slaoui opened the cash register, he pushed the silent alarm. When the Malden police arrived, Slaoui, who was the only one of the three Petro-Plus employees to have seen either of the robbers, described the robbery and told the police that he had recognized the robber to be someone named Eric Wright who was a regular customer of the store. Several days later, Mr. Slaoui went to the Malden police station to meet with Detective Eugene Walsh and to look at some photograph identification books. During this meeting with Detective Walsh, Slaoui described Eric Wright as being five feet, six inches tall, of slight build, and having blonde hair. Slaoui was unable to identify anyone in the photographs as the robber.

During the ten days that followed the robbery, Eric Wright stopped frequenting the PetroPlus convenience store to purchase cigarettes. On September 19, 1996, Karim Slaoui and another employee named

Al Brito were working at the PetroPlus gas station around 5:00 p.m. when Brito spotted Eric Wright walking across the street from the gas station. The person was covering part of his face with a dark-colored cloth shirt, apparently in an effort to conceal his identity from the gas station employees. Seeing this, Brito alerted Slaoui and asked him if this was the person who had robbed the gas station ten days earlier. Because Slaoui was unable to get a good look at the person's face, he could not determine whether it was Eric Wright. The police were summoned.

Detective Walsh and his partner were returning to Malden from Lynn, Massachusetts, at about 5:00 p.m., on September 19, when they overheard a radio dispatch to the PetroPlus gas station. The detectives responded to the call and drove to the gas station where they met with Sergeant John Amirault of the patrol division. Sergeant Amirault told Detective Walsh and his partner that there had been a possible sighting of the suspect in the September 9 robbery. The officers searched the immediate vicinity, but were unable to find anyone matching the suspect's description.

Sergeant Amirault took Karim Slaoui with him and drove through the neighborhood in his police cruiser looking for the suspect. While they were driving, they came across a group of people gathered on nearby Richardson Street whom Slaoui immediately recognized as friends of Eric Wright. At some point thereafter, Sergeant Amirault began to search inside several houses close to the gas station and entered the cellar of a house at 17 Richardson Street through an unlocked back door. In the cellar, he found the petitioner, Anthony Pagano, hiding down behind the boiler.

Upon finding the petitioner hiding in the cellar, Sargent Amirault placed the petitioner under arrest for trespassing. Be-fore taking the petitioner to the Malden police station, Sergeant Amirault arranged for Karim Slaoui to be brought to the scene to make an identification. Upon seeing the petitioner, Slaoui said: "That's him; I'll never forget his eyes or his voice." The petitioner was subsequently charged with and tried for armed robbery while masked pursuant to Massachusetts General Laws, Chapter 265, Section 17. He was eighteen years old at the time of the trial. The reliability of Slaoui's identification was the only evidence linking petitioner to the crime.

At trial, the petitioner admitted that he knew Slaoui and that he had been a regular customer of the store before the robbery. He also admitted Slaoui knew him as Eric Wright. To explain his use of this alias, the petitioner testified that his friends called him Eric Wright as a nickname in homage to a popular rap singer by the same name. This was corroborated by other evidence and unchallenged by the prosecutor.

In his defense, the petitioner presented evidence of an alibi for the time of the robbery on the night of September 9, 1996. The petitioner testified that on that night he was at his girlfriend's house until 10:00 p.m., which was his curfew. He further testified that when he returned home at 10:05 p.m., he called his girlfriend and talked with her on the telephone for one hour. His story was corroborated by the testimony of his girlfriend's mother, Donna DiPrisco. DiPrisco testified that the petitioner had left her home at 10:00 p.m. to make his curfew and that she had answered the phone when he called her house five minutes later.

In addition to offering an alibi for his whereabouts on the night of the robbery, the petitioner also offered testimony explaining his presence in the cellar at 17 Richardson Street on September 19, 1996.

He testified that he was heading towards his girlfriend's house at 11 Richardson Street, an adjacent apartment building, when he ran into a friend. They hid behind the house at 17 Richardson Street to smoke some marijuana. He said that when he and his friend spotted Sergeant Amirault's police cruiser, he ran into the basement out of fear of being discovered smoking marijuana.

In addition to testifying on his own behalf, and offering the testimony of Donna DiPrisco to support his alibi, the petitioner attempted to present an expert witness, Dr. Alexander D. Yarmey, who would have testified on the issue of voice identification. In his offer of proof, the petitioner's trial counsel told the judge that the witness was prepared to testify that identifications based on the recognition of the sound of another person's voice have a high potential for inaccuracy, particularly in the context of an armed robbery of short duration. The judge denied counsel's request to present the expert testimony on the grounds that the reliability of Karim Slaoui's voice identification was within the common knowledge and understanding of the jury and the proffered testimony would not help the jury in deciding the case.

Closing arguments were delivered to the jury after the defendant rested his case on Wednesday, January 28, 1998. At the start of the prosecutor's closing argument, he made the following statement:

To me this is probably one of my favorite times of the trial ... do you remember when we first began the trial, the Judge talked about a legal concept called the presumption of innocence? And this defendant like every other defendant in this country enjoys the protection of that legal concept called presumption of innocence.

But *now* as we come to the end of this trial, the presumption of innocence, which I sometimes characterize as somebody wearing like a cloak, and that's how he's protected by wearing that cloak, but *now that cloak comes off.* And now, you people get to judge. You guys get to decide the facts in this case. For me this is where it gets good. [Emphasis supplied.]

At the conclusion of the closing argument, petitioner's trial counsel objected and the judge merely noted the objection. No curative instruction was given. Only the traditional admonition that closing arguments are not evidence was given during the judge's charge to the jury. At the close of the instructions trial counsel made a motion for mistrial, which was denied.

On January 30, 1998, after two days of deliberation, the jury returned with a question for the court. The question from the jury asked: "Can you explain reasonable doubt to all the jurors?" The judge had the jury brought into the courtroom and re-read his previous instruction on reasonable doubt. Two and a half hours later, the jury returned with a verdict of guilty. The petitioner was later sentenced by the court to a term of imprisonment of eight years.

## II. THE HABEAS CORPUS STANDARD

The standard for reviewing a petition for writ of habeas corpus is set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") Pub.L. No. 104–132, 110 Stat. 1214 (1996). Because the petitioner is in state custody, his application for habeas review is controlled by Title 28, Section 2254(d)(1) of the United States Code. This statute permits a federal court to issue a writ of habeas corpus if the underlying state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as deter-

mined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

■ Within Section 2245(d)(1), there are two categories of state court decisions that can form the basis for the issuance of a writ of habeas corpus. "[T]he first category embraces cases in which a state court decision directly contravenes Supreme Court precedent." *Williams v. Matesanz,* 230 F.3d 421, 424 (1st Cir.2000). A state court decision is contrary to clearly established Supreme Court precedent "if that decision applies a rule that contradicts a rule clearly articulated by the Supreme Court or if the state court confronts a set of facts that are materially indistinguishable from an earlier Supreme Court decision, yet arrives at a result that differs from that precedent." *Mastracchio v. Vose,* 274 F.3d 590, 597 (1st Cir.2001).

■ The second category of state court decisions that qualify for the issuance of a writ of habeas corpus under Section 2254(d)(1) are those cases "in which a state court decision, although not 'contrary to' relevant Supreme Court precedent, nonetheless constitutes an 'unreasonable application' of relevant Supreme Court precedent." *Matesanz,* 230 F.3d at 424. This can occur in a case where "a state court correctly identifies the applicable federal rule but applies it in an unreasonable manner to the facts of a particular case." *Id.* at 425; *see also Mastracchio,* 274 F.3d at 597. This can also occur where "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor,* 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Finally, the standard for reasonableness is an objective one. Thus, a state court decision is considered to be objectively reasonable unless it "falls 'outside the universe of plausible, credible outcomes.'" *Matesanz,* 230 F.3d at 425 (quoting *O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir.1998)).

## III. ANALYSIS

Anthony Pagano has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his First Amended Petition, the petitioner presents four separate grounds upon which he argues that relief should be granted. First, the petitioner argues that he was deprived of his Fourteenth Amendment right to due process when the prosecutor told the jury during closing argument that the presumption of innocence terminates once the jury begins its deliberation. This is essentially an argument alleging that prosecutorial misconduct in the closing argument resulted in a dilution of the petitioner's right to be presumed innocent, as well as of his right to a fundamentally fair trial.

Second, the petitioner argues that he was deprived of his First and Fourteenth Amendment rights to freedom of association and a fair trial when the prosecutor engaged in deliberately unfair and inflammatory cross-examination of the petitioner. Third, the petitioner argues that the Massachusetts Appeals Court deprived him of his Fourteenth Amendment right to due process by arbitrarily and capriciously refusing to review a fully preserved and fully argued claim of error. Finally, the petitioner argues that he was denied his Fourteenth Amendment right to due process when the trial court excluded his proffered expert testimony on voice identification.

### A. Prosecutorial Misconduct in Closing Argument.

The first ground on which the petitioner bases his claim for federal relief involves a statement that the prosecutor made to the jury during closing argument. Specifically, the petitioner refers this Court to that

part of the prosecution's closing where the prosecutor said:

> To me this is probably one of my favorite times of the trial ... do you remember when we first began the trial, the Judge talked about a legal concept called the presumption of innocence? And this defendant like every other defendant in this country enjoys the protection of that legal concept called presumption of innocence.
>
> But *now* as we come to the end of this trial, the presumption of innocence, which I sometimes characterize as somebody wearing like a cloak, and that's how he's protected by wearing that cloak, but *now that cloak comes off.* And now, you people get to judge. You guys get to decide the facts in this case. For me this is where it gets good. [Emphasis supplied.]

The petitioner argues that this statement by the prosecutor was impermissible because it incorrectly suggested that the presumption of innocence would not apply during jury deliberations and that the defendant had some burden to prove his innocence. Furthermore, the petitioner argues that by making this statement during closing argument the prosecutor deprived him of his right to due process.

■ There can be no doubt that the prosecutor's statement relating to the presumption of innocence was improper. The presumption of innocence, which is afforded to every criminal defendant brought to trial in this country, does not "come off" during the prosecutor's closing argument, but remains with the defendant until the jury determines that the government has proven each and every element of the charge beyond a reasonable doubt. *See Delo v. Lashley*, 507 U.S. 272, 278, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993) ("Once the defendant has been convicted fairly in the guilt phase of the trial, the presumption of innocence disappears."). Both state and federal courts have considered such statements made by prosecutors to be erroneous and improper. *See, e.g., Commonwealth v. Thomas*, 401 Mass. 109, 113, 514 N.E.2d 1309 (1987); *United States v. Weinstein*, 1993 WL 89800, at *6 (1st Cir. 1993) (unpublished decision).

■ However, because this is a petition for a writ of habeas corpus, the mere fact that the prosecutor's statement was erroneous or prejudicial is insufficient to justify the intervention of this Court. *Ferreira v. Fair*, 732 F.2d 245, 249 (1st Cir. 1984). Instead, this Court is limited to reviewing state court proceedings for constitutional error. *Id.* ("[W]e have no supervisory authority over state courts and may review their proceedings only for constitutional error."). There are only two circumstances under which prosecutorial misconduct rises to the level of constitutional error. The first is where the prosecutor's conduct infringes upon a specific right, such as the privilege against compulsory self-incrimination or the right to counsel. *Darden*, 477 U.S. at 182, 106 S.Ct. 2464; *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868; *Amirault v. Fair*, 968 F.2d 1404, 1406 (1st Cir.1992). When specific constitutional rights are involved, "this Court [takes] special care to assure that prosecutorial conduct in no way impermissibly infringes them." *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868; *accord Darden*, 477 U.S. at 182, 106 S.Ct. 2464.

■ The other circumstance under which prosecutorial misconduct can rise to the level of a constitutional violation is where the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868; *accord Darden*, 477 U.S. at 182, 106 S.Ct. 2464; *Amirault*, 968 F.2d at 1406. In other words, even if a prosecutor's misconduct does not infringe upon a specific

constitutional right, it can still violate the Due Process Clause of the United States Constitution by rendering the underlying trial "fundamentally unfair." *See Darden,* 477 U.S. at 182–83, 106 S.Ct. 2464 (quoting *Darden v. Wainwright,* 513 F.Supp. 947, 958 n. 15 (M.D.Fla.1981)); *Ferreira,* 732 F.2d at 249–50. In determining whether a prosecutor's misstatements "so infected the trial with unfairness as to make the resulting conviction a denial of due process," courts tend to consider various factors such as the severity of the misconduct, the sufficiency of any curative judicial instructions, and the likelihood that the misconduct affected the outcome of the case. *Amirault,* 968 F.2d at 1406; *Ferreira,* 732 F.2d at 249–50; *Agard v. Portuondo,* 117 F.3d 696, 713 (2d Cir. 1997), *rev'd on other grounds,* 529 U.S. 61, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000).

▆▆▆▆ In this case, the prosecutor's statement, which tended to undermine the presumption of innocence, infringed upon a specific constitutional right. *Mahorney v. Wallman,* 917 F.2d 469, 472–73 (10th Cir. 1990), *cited with approval in Mims v. DiPaolo,* 2000 WL 50373, at * 9, 201 F.3d 428 (1st Cir.2000) (unpublished decision). *But see Kellogg v. Skon,* 176 F.3d 447, 451 (8th Cir.1999). "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams,* 425 U.S. at 503, 96 S.Ct. 1691. It is considered to be "an element of Fourteenth Amendment due process." *Taylor v. Kentucky,* 436 U.S. at 486 n. 13, 98 S.Ct. 1930. *Blacks Law Dictionary* defines the presumption as "[t]he fundamental criminal-law principle that a person may not be convicted of a crime unless the government proves guilt beyond a reasonable doubt, without any burden placed on the accused to prove innocence." Blacks Law Dictionary 1205 (7th ed.1999). Much like the right to counsel, the right to remain silent, and the right not to have the

evidence misstated or manipulated, the right to be presumed innocent until proven guilty is a "specific right" afforded to the accused under the United States Constitution. *See Darden,* 477 U.S. at 182, 106 S.Ct. 2464.

Perhaps more important in the context of habeas review is the fact that the constitutional status of the presumption of innocence has been clearly established by Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). In 1895, in *Coffin v. United States,* 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895), the Supreme Court stated that "[t]he principle that there is a presumption of innocence in favor of the accused is undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law. It is stated as unquestioned in the textbooks, and has been referred to as a matter of course in the decisions of this court and in the courts of several States." 156 U.S. at 453, 15 S.Ct. 394. The *Coffin* Court traced the presumption as far back as *Deuteronomy* and Roman law, stating that "it has existed in the common law from the earliest time." *Id.* at 454–55, 15 S.Ct. 394.

Eighty-one years after *Coffin,* in *Estelle v. Williams,* the Supreme Court elaborated on the constitutional underpinnings of the presumption of innocence by saying that the presumption was an element of the right to a fair trial guaranteed under the Due Process Clause of the Fourteenth Amendment. 425 U.S. at 503, 96 S.Ct. 1691. Specifically, the Court stated that "[t]he right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment" and "[t]he presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of justice." *Id.* Two years later, in *Taylor v. Kentucky,* the Court further solidified the close rela-

tionship between the presumption of innocence and due process, stating that "the Due Process Clause of the Fourteenth Amendment must be held to safeguard 'against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.' The 'purging' effect of an instruction on the presumption of innocence simply represents one means of protecting the accused's constitutional right to be judged solely on the basis of proof adduced at trial." 436 U.S. at 485–86, 98 S.Ct. 1930 (internal citations omitted).

Originally, the Supreme Court considered the presumption of innocence to be "separate and distinct" from the "equally fundamental" principle that the prosecution bears the burden of proving guilt beyond a reasonable doubt. *Coffin*, 156 U.S. at 460, 15 S.Ct. 394, *cited in Taylor v. Kentucky*, 436 U.S. at 483, 98 S.Ct. 1930. However, in *Taylor v. Kentucky*, the Court recognized "the error of this distinction," stating that "the 'presumption of innocence' is [a] shorthand description of the right of the accused to remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion." 436 U.S. at 483 n. 12, 98 S.Ct. 1930. This interpretation of the presumption was reinforced the following term in *Bell v. Wolfish*, where the Court stated that "[t]he presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial." 441 U.S. 520, 533, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The conclusion that the presumption is a proxy for the reasonable doubt standard is significant in light of the Supreme Court's strong admonition from *In re Winship:*

"Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

But whether the presumption of innocence is better characterized as "evidence in favor of the accused introduced by the law in his behalf," *Coffin*, 156 U.S. at 460, 15 S.Ct. 394, or as "an 'assumption' that is indulged in the absence of contrary evidence," *Taylor v. Kentucky*, 436 U.S. at 483 n. 12, 98 S.Ct. 1930, it is a specific right that cannot be impermissibly infringed upon without violating the Constitution. In this case, when the prosecutor described the presumption as a "cloak" that "comes off" at the "end of the trial," he diluted the petitioner's right to be presumed innocent until proven guilty beyond a reasonable doubt. *See, e.g., Mahorney*, 917 F.2d at 473 ("Since the essence of the error in the prosecution's comments here was that they conveyed to the jury the idea that the presumption had been eliminated from the case prior to deliberations, we conclude that petitioner's rights were affirmatively denied within the meaning of [*DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868].") The prosecutor's unfortunate misstatement in this case might not have been fatal had the judge sustained the petitioner's timely objection and given a curative instruction. *See Amirault*, 968 F.2d at 1406. However, the trial judge's decision to merely note the petitioner's objection made at the close of final arguments placed a stamp of imprimatur on the prosecutor's statement, ensuring the denial of the petitioner's constitutional right to be presumed innocent until proven guilty beyond a reasonable doubt.

 Even if the presumption of innocence were not a "specific right" within the meaning of *DeChristoforo* and *Darden,* the prosecutor's statement still rises to the level of constitutional error because it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *DeChristoforo,* 416 U.S. at 643, 94 S.Ct. 1868. The first factor considered in a fairness analysis is the severity of the prosecutorial misconduct. *See Agard,* 117 F.3d at 713; *see also United States v. Manning,* 23 F.3d 570, 574 (1st Cir.1994) (applying a similar test to determine whether prosecutorial misconduct requires reversal in a non-habeas case). In this case, the misconduct was particularly severe because the prosecutor's statement had the effect of diluting the petitioner's constitutional right to be presumed innocent until proven guilty beyond a reasonable doubt. The Supreme Court has held that this presumption is inherent to the very notion of a fair trial. *Taylor v. Kentucky,* 436 U.S. at 479, 98 S.Ct. 1930; *Coffin,* 156 U.S. at 453–54, 15 S.Ct. 394. Furthermore, the "Court has left no doubt that the probability of deleterious effects on [this] fundamental right[ ] calls for close judicial scrutiny." *Estelle v. Williams,* 425 U.S. at 504, 96 S.Ct. 1691.

 The second factor used to determine whether the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process" is the sufficiency of any curative measures. *Agard,* 117 F.3d at 713; *see also Manning,* 23 F.3d at 574. In this case, there were no measures taken by either the trial court or the prosecutor to cure the infirmity caused by the prosecutor's prejudicial statement. No curative instruction was ever given to the jury, and the trial court judge even failed to sustain petitioner's objection and merely noted it, thereby permitting the jury to receive the erroneous impression that the prosecutor's inartful metaphor regarding the loss of the "cloak" of innocence was a correct statement of law.

 The final factor in the fairness analysis is a consideration of the likelihood that a conviction would have obtained absent prosecutor's misconduct. *Agard,* 117 F.3d at 713; *see also Manning,* 23 F.3d at 574. In this case, the government's evidence against the petitioner, while sufficient to sustain a conviction under ordinary circumstances, was extremely weak. The only direct evidence offered by the government was a single eye-witness who was able to observe only the robber's eyes on account of the mask and to hear his voice.

In addition to the very weak evidence against the petitioner, there are other indications that the prosecutor's misconduct affected the outcome of the case. For example, in a case which consisted of only one full day of trial testimony, the jury took two days for deliberations. Furthermore, the jury returned on the second day of deliberations with a request that the court re-explain the concept of reasonable doubt. This presents a strong inference that the jurors were indeed affected by the prosecutor's misstatement regarding the presumption of innocence. Thus, considering the severity of the misconduct, the lack of curative measures, and the strong likelihood that the misconduct affected the outcome of the case, this Court rules that the prosecutor's statement regarding the presumption of innocence "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *DeChristoforo,* 416 U.S. at 643, 94 S.Ct. 1868.

 Having found that the prosecutor's closing argument violated the petitioner's constitutional right to be presumed innocent until proven guilty beyond a reasonable doubt, the next step is to determine whether the Massachusetts Appeals Court decision

affirming the conviction was "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Here, although the federal law regarding prosecutorial misconduct and the presumption of innocence has been clearly established, there is not a "rule clearly articulated by the Supreme Court" that is exactly on point, nor is there "an earlier Supreme Court decision" confronting "a set of facts materially indistinguishable from" these. *Mastracchio*, 274 F.3d at 597. Thus, this Court cannot say that the state court decision was "contrary to" relevant Supreme Court precedent.

 The Massachusetts Appeals Court decision to affirm the petitioner's conviction, "although not 'contrary to' relevant Supreme Court precedent, nonetheless constitutes an 'unreasonable application' of relevant Supreme Court precedent." *Matesanz*, 230 F.3d at 424. The Supreme Court precedent clearly states that prosecutorial misconduct violates the constitutional rights of the accused if it either infringes upon a specific constitutional right or if it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868; *accord Darden*, 477 U.S. at 182, 106 S.Ct. 2464. Furthermore, Supreme Court precedent has clearly established the principle that the "presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal system." *Estelle v. Williams*, 425 U.S. at 503, 96 S.Ct. 1691 (quoting *Coffin*, 156 U.S. at 453, 15 S.Ct. 394). Thus, by failing to acknowledge that the prosecutor's misconduct violated the petitioner's constitutional right to due process, the state court's application of clearly established federal law was objectively unreasonable. *See Williams v. Taylor*, 529 U.S. at 409, 120 S.Ct. 1495; *Matesanz*, 230 F.3d at 425; *O'Brien*, 145 F.3d at 25.

## B. Petitioner's Other Grounds for Relief.

In addition to his claim for relief based on the prosecutor's statements regarding the presumption of innocence, the petitioner has also raised three other grounds on which he argues that the writ of habeas corpus should issue. For his second ground, the petitioner argues that he was deprived of his First and Fourteenth Amendment rights to freedom of association and a fair trial when the prosecutor engaged in deliberately unfair and inflammatory cross-examination of the petitioner. For his third ground for relief, the petitioner argues that the Massachusetts Appeals Court deprived him of his Fourteenth Amendment right to due process by arbitrarily and capriciously refusing to review a fully preserved and fully argued claim of error. Finally, the petitioner argues that he was denied his Fourteenth Amendment right to due process when the trial court excluded his proffered expert testimony on voice identification.

None of these grounds for relief can satisfy the standard required under 28 U.S.C. § 2254(d)(1). With respect to each of these three grounds, the petitioner is unable to "show that Supreme Court precedent requires an outcome contrary to that reached by" the Massachusetts Appeals Court. *Matesanz*, 230 F.3d at 425 (quoting *O'Brien*, 145 F.3d at 24–25). Likewise, the petitioner is unable to show that the Massachusetts Appeals Court decision constitutes an objectively unreasonable application of relevant Supreme Court precedent. *Id.* at 424–25. Thus, the petitioner's second, third and fourth grounds for relief are denied.

## IV. CONCLUSION

Almost two hundred years ago, a famous jurist of the common law made a statement that applies exceptionally well to the facts of this case:

> [T]he presumption in favor of innocence is not to be reargued by mere suspicion. I am sorry to see, in this information, that the public prosecutor treats this too lightly; he seems to think that the law entertains no such presumption of innocence. I cannot listen to this. I conceive that this presumption is to be found in every code of law which has reason, and religion, and humanity, for a foundation. It is a maxim which ought to be inscribed in indelible characters in the heart of every judge and juryman. *McKinley's Case*, 33 St. Tr. 275, 506 (1817) (Lord Gillies), *cited in Coffin*, 156 U.S. at 456, 15 S.Ct. 394.

And in the heart of every prosecutor as well. For the concept of the presumption of innocence constitutes a bedrock principle of our system of constitutional criminal jurisprudence.

In conclusion, this Court rules that the prosecutor's statement is unconstitutional under either of the two tests for prosecutorial misconduct. First, it infringed the specific constitutional right of the petitioner to be presumed innocent until a jury had found the Commonwealth proved his guilt by probative evidence beyond a reasonable doubt. *See Taylor v. Kentucky*, 436 U.S. at 486, 98 S.Ct. 1930; *Estelle v. Williams*, 425 U.S. at 503, 96 S.Ct. 1691. Second, the prosecutor's statement so infected petitioner's trial with unfairness that his conviction amounted to a denial of due process. *See Darden*, 477 U.S. at 182, 106 S.Ct. 2464; *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868.

Having found a violation of the Constitution, this Court further concludes that the Massachusetts Appeals Court's decision denying petitioner relief was an unreasonable application of Supreme Court precedent regarding the presumption of innocence and prosecutorial misconduct.. 28 U.S.C. § 2254(d)(1). Therefore, petitioner's conviction for armed robbery while masked is hereby vacated and the case is remanded to the Massachusetts Superior Court for a new trial.

SO ORDERED.